# SHAW KELLER LLP

Andrew E. Russell
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com

June 26, 2012

### BY ECF AND E-MAIL

The Honorable Sherry R. Fallon
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

    Re: *Avid Technology Inc.* v. *Harmonic Inc.*, Case No. 1:11-cv-01040-GMS-SRF
      Discovery Teleconference Scheduled for Thursday, June 28, 2012 at 3:30 PM
      Per Order dated June 22, 2012 (D.I. No. 40)

Dear Magistrate Judge Fallon:

  We represent Plaintiff Avid Technology Inc. ("Avid") in this patent infringement action. We respectfully submit this letter to outline the issues in the parties' discovery dispute, which concerns the parties' disagreement over one provision of an otherwise stipulated proposed protective order, and to set forth Avid's position on these issues.

  Background and Overview. This action was filed on October 28, 2011. Avid contends in this action that Defendant Harmonic Inc. ("Harmonic") is infringing two of Avid's patents relating to data storage technology by a product that Harmonic sells known as the "Omneon MediaGrid."

  On April 5, 2012, following the parties' Rule 26(f) meet-and-confer, Avid proffered to Harmonic for comment a draft proposed protective order for discovery in this action. Harmonic did not comment upon this draft, but rather, on April 10, 2012, proffered its own counter-draft, which covered substantially the same issues as Avid's original draft but apparently in a form preferred by Harmonic. In the interest of expeditiously resolving the protective order, Avid agreed to try to work with Harmonic's draft.

  Comments and negotiations continued in the following weeks, both by e-mail and a May 11, 2012 telephonic meet-and-confer, to the point where the parties were in agreement on all but one issue, namely access by in-house counsel to information designated "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL – SOURCE CODE." Citing competitive concerns, Harmonic rejected Avid's proposal to have at least some in-house counsel for each side be able to see such material.

  In an effort to be sensitive to Harmonic's competitive concerns, Avid said that it would be willing to accept such extreme restrictions if the parties would "reverse the burden" as to such materials, *i.e.*, that if such designations were challenged, the material would be automatically downgraded to merely "CONFIDENTIAL" (which in-house counsel could see) if the

# SHAW KELLER LLP

The Honorable Sherry R. Fallon
Page 2

designating party did not seek judicial intervention within a certain amount of time after the parties' meet-and-confer about the challenge to the designation. Avid's position was that such a procedure would curtail promiscuous over-designation of confidential information, and quickly drive challenges over such designations to their proper resolution with a minimum of judicial intervention, and that doing so was a critical counter-balance under a confidentiality regime that placed such extreme burdens on outside counsel's ability to confer meaningfully with in-house counsel responsible for overseeing this litigation.

Harmonic, however, rejected this compromise, contending that the burden to seek judicial intervention in the event of over-designation needed to remain with the challenging party, lest challenges to confidentiality designations be made for improper or harassing motives. Counsel further met and conferred on this specific issue in person on June 19, 2012, but remained at odds, thus necessitating this motion so that the protective order can now be finalized.

Copies of Avid's current proposed draft of the proposed protective order with the "reversed burden" provision (in ¶ 6.4), and of a markup showing the change that Harmonic seeks, are attached hereto as Exhibits A and B, respectively. Avid requests that the Court enter Avid's proposed protective order, which reflects Avid's proposal on this point.

Discussion. Judges of this Court often have expressed discomfort with protective order provisions that completely bar in-house counsel from access to discovery materials, even when they have been designated "highly confidential." *See, e.g.*, *Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*, C.A. No. 02-232-SLR (D. Del. Nov. 21, 2002), Tr. at 54 ("I generally allow in every case one person in-house, whether it's a technical person or a legal person, who has access to everything, because I believe that the clients deserve to have one person with access to everything.") (attached as Exhibit C); *Avery Dennison Corp. v. Minnesota Mining & Mfg. Co.*, C.A. No. 01-123-JJF, 2001 U.S. Dist. LEXIS 22315, at **6-7 (D. Del. Oct. 26, 2001) (citing cases allowing in-house and patent counsel to see such material, and noting that "[l]ike outside counsel, in-house counsel is bound by professional and ethical responsibilities and their conduct is subject to sanctions").

Notwithstanding this pro-access policy, Avid does not challenge on this motion that there can be circumstances when access to truly sensitive material may not be appropriate for counsel involved in patent prosecution, or for general counsel involved in competitive decision-making. But because this can result in a paradox where the only in-house attorneys who potentially could see such material are those who are not in a position to confer meaningfully about the case with outside counsel (as would be the case here for Avid), Avid proposed a counter-measure to confine this undesirable situation to only those situations where it was truly warranted — the "reversed burden." Having this counter-measure in place will guard against promiscuous over-use of the higher-level confidentiality designations, by making designating parties very conscientious about limiting the use of those designations to situations involving the kind of serious competitive concerns that the Court would agree warrant withholding the material from

# SHAW KELLER LLP

The Honorable Sherry R. Fallon
Page 3

even in-house counsel. Avid believes that this provides simple practical protection against over-designation, while posing no threat to any legitimate designation that the designating party is prepared to defend and that the Court would uphold. It would confine the restriction on Avid's ability to consult meaningfully with its outside counsel to situations that truly warrant it, and force a very quick non-judicial resolution among the parties themselves whether any given situation truly warrants such strong protection or not.

Harmonic has rejected this proposal, citing a claimed fear of a tidal wave of baseless challenges from Avid that will force it constantly to run to the Court to defend legitimate designations — despite the proposed order's existing provision about possible sanctions for frivolous positions on designations/challenges (*see* Exh. A ¶ 6.4), and its provision allowing potential future judicial modification of the order (*id.* ¶ 14.1), both of which provide ample recourse against abuse of the proposed procedure. Given the amount of over-designation that routinely occurs in commercial litigation, whether from sloppiness or for tactical reasons, and the fact that going to Court will add weeks of delay to Avid's ability to consult meaningfully with its outside counsel, potentially repeatedly issue by issue, Harmonic's approach is not practical, notwithstanding its counsel's assurances that it will be cooperative when challenges to designations are made.

The fact of the matter is that, whichever way the burden runs, there is a risk that a party can abuse it to force the opposing party to unnecessarily "run into court" to protect its rights. Avid's point is simply that if Harmonic is inflexible that there must be higher-level confidentiality designations so stringent that they completely deprive Avid of meaningful consultation between outside and in-house counsel, then this extraordinary imposition and interference with the litigation process should be balanced and mitigated by reversing the burden of seeking judicial intervention, so that the occurrence of such an unfortunate situation is confined to those instances where it is actually warranted. Given the impact of Harmonic's proposed restrictions on the client's ability to consult with its own outside counsel, the beneficiary of any "is it really worth it to run to court?" inertia should be the challenging party, rather than the designating party.

Requested Relief. Avid accordingly requests that the Court enter the proposed stipulated protective order adopting Avid's "reversed burden" provision as to challenges to higher-level confidentiality designations. We thank the Court for its attention to this matter and look forward to addressing these issues with the Court on June 28, 2012.

Respectfully submitted,

Andrew E. Russell

cc: All counsel of record (via ECF)