

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

**David E. Moore**
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone
302 658-1192 Fax

June 27, 2012

**VIA ELECTRONIC FILING**

The Honorable Sherry R. Fallon
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

    Re:  *Avid Technology Inc. v. Harmonic Inc.*, **C.A. No. 11-1040-GMS-SRF**

Dear Magistrate Judge Fallon:

    Pursuant to the Court's June 22, 2012 Order (D.I. 40), Harmonic respectfully submits this letter to set forth its position on the issues presented by Avid's letter dated June 26, 2012 (D.I. 41).

    Avid and Harmonic agree on all the substantive provisions of the protective order. Recognizing that they are competitors selling directly competing products, Avid and Harmonic agree that it would be improper to provide their respective in-house counsel with access to "Highly Confidential Outside Attorneys' Eyes Only" and "Restricted Confidential – Source Code Information." The parties also agree on the definition on what constitutes "Highly Confidential" and "Restricted Confidential" information. *See* Sections 2.7 and 2.8 of the Draft Protective Order. The parties further agree that such information is distinct from "Confidential" information. The parties' sole dispute is the legal mechanism for resolving disputes regarding the designation level of documents produced "Highly Confidential."

    Specifically, the parties disagree regarding which party has the responsibility for initiating the discovery dispute process with the Court with respect to the requested down designation of "Highly Confidential" documents to "Confidential" documents. By its own admission, Avid seeks to reverse the traditional burden in protective order disputes. Avid proposes a draconian provision that mandates that a designating party initiate the discovery dispute process with the Court within five business days after the initial meet-and-confer regarding a dispute over designation. Failure to initiate such process automatically results in the down designation of the disputed "Highly Confidential" documents at issue to "Confidential" and those documents being made available to the employees of its direct competitor. Avid's proposal artificially limits the ability of the parties to resolve disputes through the meet-and-confer process and will force the parties to unnecessarily burden the Court in the discovery process to protect the "Highly Confidential" nature of its sensitive competitive information. In

The Honorable Sherry R. Fallon
June 27, 2012
Page 2

contrast, Harmonic proposes the standard procedure whereby the party challenging the designation must initiate the discovery dispute process. This standard procedure does not place any artificial deadlines on the objecting party. When a dispute arises over designations, the parties engage in a meaningful meet-and-confer process and make intelligent choices regarding whether to seek relief from the Court.

Indeed, under Harmonic's proposal, parties will only seek assistance from the Court when access to in-house counsel or senior officers will actually advance the case. Harmonic's proposal provides the proper incentives for both sides to act reasonably. The designating party has the burden of persuasion regarding the proper designation of a disputed document and such burden will act as a deterrent to over designation. Potential sanctions also apply in the event a designating party over designates the level of protection for a document.

In its letter to the Court, Avid fails to address the potential harm to Harmonic from disclosure of its highly confidential information to a direct competitor. Without this lawsuit, Avid would never have access to Harmonic's commercially sensitive, strategic information. Furthermore, it is undisputed that Harmonic will produce information in this case that could be used to Avid's competitive advantage. As the Federal Circuit recognized in *In re Deutsche Bank Trust Co.*, 605 F.3d 1373, "[i]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." 605 F.3d 1373, 1378 (Fed. Cir. 2010) (internal citations omitted). The risk and potential harm to Harmonic from disclosing highly confidential information to a direct competitor is significant. This potential harm is a key factor favoring adoption of the traditional dispute mechanism proposed by Harmonic.

Harmonic has already agreed to allow two in-house counsel and two senior officers access to Harmonic documents designated "Confidential." Two of those Avid employees are charged with making competitive decisions for Avid and could inadvertently use the information obtained in discovery to advance Avid's business interest against its direct competitor Harmonic. Nevertheless, Harmonic has agreed to the significant burden and risk associated with allowing a direct competitor access to "Confidential" information in recognition of Avid's desire for in-house counsel and senior officers to make informed decisions regarding this litigation. Harmonic, however, cannot agree to the additional burden of documents it has designated as "Highly Confidential" being automatically down designated unless Harmonic seeks assistance from the Court.

In support of its position, Avid claims this Court *often* has expressed discomfort with a complete bar to in-house counsel's access to discovery materials, including "Highly Confidential" documents. Ltr Br. at 2 (emphasis added). In support of its statement that this happens often, Avid cites two nonprecedential opinions from over a decade ago; well before the Federal Circuit decided *Deutsche Bank*. The first support Avid cites is a transcript from a hearing in 2002. While Avid cites to language indicating that access is generally given to in-house counsel, Avid fails to cite to a passage on the very next page of the transcript that states: "And you have to understand that these people, I mean, it's bottom line, in this court I think your local counsel will tell you that they can't be involved in marketing, business decisions, patent

The Honorable Sherry R. Fallon
June 27, 2012
Page 3

prosecutions, that sort of thing." *Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*, C.A. No. 02-232-SLR (D. Del. Nov. 21, 2002), Tr. at 55. Under this standard, neither of Avid's proposed in-house counsel would be allowed access to the confidential information. In addition, the second case cited by Avid is distinguishable from the current dispute. In that case, the parties *had already agreed* to grant in-house counsel access to highly confidential information and the sole dispute was how many people would have access and whether to create a subset of the highly confidential documents that would be limited to outside counsel. *Avery Dennison Corp. v. Minnesota Mining & Mfg. Co.*, C.A. No. 01-123-JJF, 2001 WL 1339402 (D. Del. 2001). Unlike here, the parties in *Avery* did not dispute giving in-house counsel access to Highly Confidential documents. Also, this second case did not require that the Court balance the risk to the disclosing party against the potential harm to the opposing party. *Deutsche Bank*, 605 F.3d at 1380.

What is clear from Avid's letter is that Avid would like to give in-house counsel and senior officers access to as much of Harmonic's confidential information as possible. Avid fails to explain how access to a larger volume of Harmonic's documents is going to allow it to consult more meaningfully with its client. Most issues in patent litigation inherently implicate a company's most protected information, including technical, marketing, and sales information. The infringement contentions are based on the accused infringer's most sensitive technical documents, including source code. Damages arguments involve the accused infringer's marketing strategies, customers, sales, and settlement agreements. By definition, these categories of documents are all Highly Confidential. *See,* Section 2.7 of the Draft Protective Order. The prior art and invalidity contentions, on the other hand, are largely public already. Therefore, Avid's in-house counsel and senior officers will have access to their own product information in order to evaluate Harmonic's patent infringement claims and most of the information related to Harmonic's invalidity claims. It is therefore unclear how an automatic down designation provision will assist Avid in being able to consult meaningfully with its outside counsel.

Requested Relief. Harmonic respectfully request that the Court adopt Harmonic's proposal and deny Avid's proposal providing for an automatic down designation of documents and reversing the burden for initiating discovery disputes with the court relating to the down designation of Highly Confidential documents.

Respectfully,

*/s/ David E. Moore*

David E. Moore

DEM:nmt
1064989/38568

cc: Clerk of Court (via hand delivery)
Counsel of Record (via electronic mail)