# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVID TECHNOLOGY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 11-1040-GMS-SRF |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| HARMONIC INC., ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT HARMONIC INC.'S NOTICE OF DEPOSITION TO PLAINTIFF AVID TECHNOLOGY, INC. PURSUANT TO FEDERAL RULE OF <u>CIVIL PROCEDURE 30(B)(6)</u>

OF COUNSEL:

James C. Yoon
Stefani E. Shanberg
Robin L. Brewer
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Tel: (650) 565-3645

Dated: August 17, 2012
1071455 / 38568

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
David E. Moore (#3983)
Jonathan A. Choa (#5319)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
jchoa@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Harmonic Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **AVID TECHNOLOGY, INC.,**<br><br>    Plaintiff,<br><br>v.<br><br>**HARMONIC INC.,**<br><br>    Defendant. | C.A. No. 11-01040-GMS<br><br>JURY TRIAL DEMANDED |

## DEFENDANT HARMONIC INC.'S NOTICE OF DEPOSITION TO PLAINTIFF AVID TECHNOLOGY, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

YOU ARE HEREBY NOTIFIED THAT, pursuant to Federal Rule of Civil Procedure 30(b)(6), defendant Harmonic Inc. ("Harmonic") will take the deposition on oral examination of plaintiff Avid Technology, Inc. ("Avid"), commencing at 9:00a.m. on September 6, 2012, or at another date and time to be agreed upon in writing by counsel for the parties, at the offices of Wilson Sonsini Goodrich & Rosati, located at 1301 Avenue of the Americas, 40th Floor, New York, NY 10019. The deposition will continue from day to day until completed. The deposition shall cover and include those topics set forth below. The deposition will be conducted before a court reporter authorized to administer oaths and will be recorded by stenographic, audio, video, and/or real-time transcription (*e.g.,* LiveNote) means. You are invited to attend and participate.

Pursuant to Rule 30(b)(6), Avid is required to designate one or more knowledgeable persons to testify on its behalf with respect to the matters set forth below, and the person(s) so designated shall testify as to those matters known or reasonably available to Avid. By August 27, 2012, Avid shall inform Harmonic of the person(s) designated to testify on Avid's behalf with respect to these matters, and specify the matters on which each person will testify.

## DEFINITIONS

1.  The "'808 Patent" means U.S. Patent No. 6,760,808, and all foreign, divisional, reissue, reexamination or continuation patents, and applications relating to U.S. Patent No. 6,760,808.

2.  The "'309 Patent" means U.S. Patent No. 7,487,309, and all foreign, divisional, reissue, reexamination or continuation patents, and applications relating to U.S. Patent No. 7,487,309.

3.  "Asserted Patents" mean the '808 Patent and the '309 Patent.

4.  "Plaintiff," "Avid," "You," "Your," and/or "Yourself" shall mean Plaintiff Avid Technology, Inc., as well as any predecessors, successors, subsidiaries, affiliates, segments or divisions thereof, any present or former members of its Board of Directors, any present or former officers, employees, agents, representatives, attorneys, accountants or other Persons acting or purporting to act on its behalf.

5.  "Harmonic" shall mean Defendant Harmonic Inc. and its officers, directors, employees, agents, attorneys, parents, subsidiaries, affiliated or predecessor corporations, and any other person or entity acting on its behalf or subject to its control.

6.  "Person" or "Persons" means, unless otherwise specified, any human being, firm, entity, corporation, partnership, proprietorship, association, joint venture, other form of business organization or arrangement, government or government agency of every nature and type.

7.  "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8.  Use of the singular shall also be construed as the plural, and vice-versa.

9.  "Any" and "all" shall be understood to include "each and every."

10. "Communication" refers to any transmission, exchange, or transfer of information by any means, including without limitation, meetings, telephone conversations, emails, correspondence, memoranda, contracts, agreements, and verbal actions intended to or actually conveying information or data.

11. "Document" and "documents" shall have the same meaning and scope as in Rule 34 of the Federal Rules of Civil Procedure and shall include any written, printed, recorded, or graphic matter that is or has been in Avid's actual or constructive possession or control, regardless of the medium on which it is produced, reproduced, or stored, including without limitation anything that can be classified as a "writing," "original," or "duplicate." Any document bearing marks, including without limitation initials, stamped indicia, comments or notations not a part of the original text or photographic reproduction thereof, is a separate document.

12. "Date" means the exact day, month, and year, if ascertainable, or if not, Avid's best approximation thereof.

13. The term "identify" or "identity" with respect to a document shall mean the names of any persons that appear on the document, any date the document bears, the title of the document, and a description of the substance of the document.

14. The term "identify" or "identity" with respect to an individual shall mean the full name, present position and business affiliation, last known business or residence address, and last known telephone number of such individual.

15. The term "identify" or "identity" with respect to an entity shall mean its full name, the present or last known address of its principal office or place of business, and the type of entity (e.g., corporation, partnership, unincorporated association).

16. The terms "regarding," "relating to," "referring to," or "concerning" shall mean, in whole or in part, addressing, analyzing, concerning, containing, commenting on, discussing,

describing, identifying, reflecting, reporting on, stating, dealing with, or in any manner pertaining to.

## TOPICS

Pursuant to Rule 30(b)(6), Avid shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf with respect to the following matters:

1. The identity of all Harmonic products or Harmonic enabled products that Avid contends infringe the Asserted Patents and the factual basis for Avid's contention that such products infringe directly or indirectly, literally or under the doctrine of equivalents.

2. The circumstances under which Avid first became aware of alleged infringement of the Asserted Patents by Harmonic.

3. Avid's contentions as to any factors related to any contention of willful infringement of the Asserted Patents by Harmonic.

4. The conception of each of the inventions claimed in the Asserted Patents including but not limited to the date of conception, the identification of any documents that corroborate the date of conception, and the respective contribution of the named inventors and/or any other individuals to the subject matter disclosed and/or claimed in the Asserted Patents.

5. The reduction to practice of each of the inventions claimed in the Asserted Patents, including but not limited to the date by which the inventions were reduced to practice, the manner in which the inventions were reduced to practice, the identification of any key documents that corroborate the date and manner of reduction to practice, and the respective contribution of the named inventors and/or any other individuals to the subject matter disclosed and/or claimed in the Asserted Patents.

6. The preferred embodiment and/or best mode of the alleged inventions of the Asserted Patents.

7. The development, testing, use, and/or experimental use, at any time prior to December 24, 1997, of any system or product that embodied the subject matter disclosed and/or claimed in the Asserted Patents (including any prototype thereof).

8. The first offer for sale and the first sale of the inventions described and/or claimed in the Asserted Patents.

9. The identification of each product that Avid has sold or offered for sale that it alleges practices one or more of the inventions claimed in the Asserted Patents, the manner in which the claimed inventions are allegedly practiced in such products, and the date(s) on which each such product was first commercially sold or offered for sale.

10. The development of the first commercial embodiment of the Asserted Patents.

11. The revenue and profits generated from Avid's sale of products allegedly practicing the Asserted Patents on a monthly, quarterly, and annual basis from 2005 to the present, including:

- The number of Avid products sold that allegedly practice the Asserted Patents;
- The revenue for each sale;
- The itemized marginal cost of manufacturing each Avid product practicing the Asserted Patents;
- The itemized total cost of manufacturing each Avid product practicing the Asserted Patents; and
- The purchaser of each such Avid product.

12. The identification of each data storage system that Avid has sold or offered for sale, and the date(s) on which each such data storage system was first sold or offered for sale.

13. The revenue and profits generated from Avid's sale of data storage systems on a monthly, quarterly, and annual basis from 2005 to the present, including:

- The number of Avid data storage systems;
- The revenue for each sale;

- The itemized marginal cost of manufacturing each Avid data storage system;
- The itemized total cost of manufacturing each Avid data storage system; and
- The purchaser of each Avid data storage system.

14. Consumer and/or market demand (and/or the lack thereof) for Avid products allegedly practicing the Asserted Patents.

15. Consumer and/or market demand (and/or the lack thereof) for any of the inventions claimed in the Asserted Patents.

16. Consumer and/or market demand (and/or the lack thereof) for Avid data storage systems.

17. Consumer reaction, both positive and negative, to Avid products allegedly practicing the Asserted Patents.

18. The first disclosure, presentation or publication of the subject matter disclosed and/or claimed in the Asserted Patents to any individual, entity or third party outside of Avid.

19. The disclosure to any person or entity of the subject matter disclosed and/or claimed in the Asserted Patents prior to December 24, 1997, including any confidentiality or non-disclosure agreements covering such disclosures.

20. Any modifications, improvements, enhancements, or changes made to the subject matter disclosed and/or claimed in the Asserted Patents following conception thereof, including any documents evidencing or relating to any such modification, improvement, enhancement or change, and also including the status development of the alleged invention as of December 24, 1997.

21. The preparation, filing, and/or prosecution of the applications for the Asserted Patents and/or any related patent or patent application.

22. The preparation, filing, and/or prosecution of any foreign patent application disclosing the same or similar subject matter as the Asserted Patents and/or any related patent or patent application.

23. Any search performed by, or on behalf of, Avid for documents or things relevant to the patentability, validity, or scope of the claims of the Asserted Patents and/or any related patent or patent application, including but not limited to any references or things uncovered by such search.

24. Prior art known to Avid at the time of the application for the Asserted Patents and/or any related patent or patent application.

25. Prior art cited by foreign patent offices relating to foreign patent applications disclosing the same or similar subject matter as the Asserted Patents and/or any related patent or patent application.

26. The identity of any non-infringing alternatives and/or acceptable substitutes to the inventions claimed in the Asserted Patents.

27. Avid's contentions, if any, relating to secondary factors of nonobviousness for the alleged inventions of the Asserted Patents, and all facts that support such contentions.

28. The market forces that drove the development of the inventions claimed in the Asserted Patents.

29. The factual bases for Avid's claims that products that allegedly practice the Asserted Patents enjoy commercial success.

30. The factual bases for Avid's claims that the Asserted Patents and/or products that allegedly practice the Asserted Patents have received industry praise.

31. The factual bases for Avid's claims that there was a long-felt need in the industry that the alleged inventions of the Asserted Patents met.

32. The factual bases for Avid's claims that the Asserted Patents and/or products that allegedly practice the Asserted Patents have been copied.

33. The revenue and profits that Avid contends it would have generated but for Harmonic's alleged infringement on a monthly, quarterly, and annual basis from 2005 to present, including:

- The number of Avid products that allegedly practice the Asserted Patents that Avid contends it would have sold but for Harmonic's alleged infringement;
- The revenue for each sale;
- The itemized marginal cost of manufacturing each Avid product that Avid contends it would have sold but for Harmonic's alleged infringement;
- The itemized total cost of manufacturing each Avid product that Avid contends it would have sold but for Harmonic's alleged infringement; and
- The purchaser of each Harmonic product.

34. The identity and location of all customers or potential customers that purchased any Harmonic product that allegedly infringes the Asserted Patents that Avid contends would instead have purchased Avid products covered by the Asserted Patents.

35. Any lost sales that Avid contends were the result of the Harmonic products that allegedly infringe the Asserted Patents.

36. The identity of any lost revenue resulting from Omneon products that allegedly infringe the Asserted Patents.

37. Facts regarding any value of the alleged inventions of the Asserted Patents to Avid in generating sales of non-patented items, and the extent of such sales.

38. The nature of Avid's presence in, and Avid's market share of, each of the following markets: (1) the U.S. market into which Avid sells Avid products allegedly practicing the Asserted Patents; (2) the worldwide market into which Avid sells the Avid products allegedly

practicing the Asserted Patents; (3) the U.S. market into which Avid sells Avid data storage systems; and (4) the worldwide market into which Avid sells data storage systems.

39. Any and all facts supporting Avid's contention that it provided notice, including actual notice and/or marking of products the purportedly practice the Asserted Patents.

40. Any and all facts supporting Avid's claims for damages based on a reasonable royalty.

41. Any and all facts supporting Avid's contention that it is entitled to an injunction.

42. Any and all facts supporting Avid's claims that it has been irreparably harmed.

43. All forecasts, plans, or projections of revenue, profitability and/or costs related to any Avid product that Avid claims it has lost, or will lose, market share resulting from Harmonic's alleged infringement.

44. Avid's capacity to manufacture, market, or deliver products that Avid contends it would have sold but for Harmonic's alleged infringement including any assessments, analyses, studies, evaluations or information relating to Avid's capacity.

45. Any assessments, analyses, studies, evaluations or information relating to the value of the inventions claimed in the Asserted Patents.

46. The portion of Avid's profits from sales of the products allegedly practicing the Asserted Patents that should be credited to the inventions claimed in the Asserted Patents.

47. Any assessments, analyses, studies, evaluation or information relating to any price erosion Avid contends it has suffered as a result of Harmonic's alleged infringement.

48. The manner in which Avid has developed or set prices for the Avid products allegedly practicing the Asserted Patents.

49. All communications between Avid and Harmonic.

50. Avid's non-privileged communications with third parties relating to the Asserted Patents, data storage systems, and/or this litigation.

51. Any inspection and/or analysis of products made, used or sold by Harmonic.

52. Avid's assessment and monitoring of competing products offered by Harmonic or any other perceived competitors of Avid, including but not limited to performance comparisons, price comparisons, and market penetration analysis.

53. Avid's intellectual property licensing policies, practices and procedures.

54. Any attempts by Avid to sell or license the Asserted Patents.

55. All licensing agreements relating to the Asserted Patents.

56. The negotiation, existence, nature, and scope of all proposed or actual agreements between Avid and any third party relating to the subject matter claimed in the Asserted Patents.

57. All communications relating to the licensing of the Asserted Patents.

58. Authentication of documents produced in this action.

59. Avid's responses to Harmonic's interrogatories.

60. Avid's document retention practices, including its practices for backing up or otherwise preserving or destroying data.


Dated: August 17, 2012               Respectfully submitted,


                                     By:     */s/ Robin L. Brewer*
                                     David E. Moore (#3983)
                                     Jonathan A. Choa (#5319)
                                     POTTER ANDERSON & CORROON LLP
                                     Hercules Plaza, 6th Floor
                                     1313 N. Market Street
                                     Wilmington, DE 19801
                                     Tel. (302) 984-6000
                                     dmoore@potteranderson.com
                                     jchoa@potteranderson.com

OF COUNSEL:

James C. Yoon
Stefani E. Shanberg
Robin L. Brewer
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California  94304
Tel. (650) 493-9300
jyoon@wsgr.com
sshanberg@wsgr.com
rbrewer@wsgr.com

**ATTORNEYS FOR DEFENDANT
HARMONIC INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of **DEFENDANT HARMONIC INC.'S NOTICE OF DEPOSITION TO PLAINTIFF AVID TECHNOLOGY, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** was served on the following counsel for Plaintiff Avid Technology, Inc., via electronic mail on August 17, 2012:

John W. Shaw, Karen E. Keller (SKAvid@shawkeller.com)
David H. Evans (devans@chadbourne.com)
Scott S. Balber (sbalber@chadbourne.com)
Robert A. Schwinger (rschwinger@chadbourne.com)
Paul J. Tanck (ptanck@chadbourne.com)
Michael S. Davi (mdavi@chadbourne.com)

/s/ Danielle Fernandes
Danielle Fernandes