# SHAW KELLER LLP

David M. Fry
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0705
dfry@shawkeller.com

December 14, 2012

**BY CM/ECF AND HAND DELIVERY**
The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building
844 N. King Street
Unit 14, Room 3124
Wilmington, DE 19801

REDACTED:
PUBLIC VERSION

Re: *Avid Technology Inc.* v. *Harmonic Inc.*,
C.A. No.11-1040-GMS-SRF

Dear Magistrate Judge Fallon:

    We represent Plaintiff Avid Technology Inc. ("Avid") in this patent infringement action against Harmonic, Inc. ("Harmonic"). Pursuant to the Court's December 11, 2012 Order, we respectfully submit this letter to outline the parties' discovery dispute. The dispute arises from Avid's request for production of source code, and Harmonic's refusal to produce the code. After the Order scheduling this teleconference was issued, Harmonic produced a portion of the requested documents but continues to withhold the majority of the documents without explanation.

**I. Overview.** In this action Avid contends that Harmonic infringes patents relating to distributed data storage technology. The technology at issue involves computer source code. Accordingly, the parties agreed to protocols for inspection and production of source code, as set forth in § 9 of the Protective Order (Dkt. No. 43).

**A.    The Protective Order, Paragraph 9**

    The Protective Order provides in pertinent part regarding the electronic inspection and paper production of source code as follows:

> **Inspection:** Any source code produced in discovery shall be made available for inspection ... in electronic format ... (Protective Order, § 9(b))
>
> **Request for Production:** [T]he Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, Technical Adviser reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (b) in the first instance ... (Protective Order, § 9(f), emphasis added)
>
> **Objection to Production:** If the Producing Party objects that the printed portions are not reasonably necessary to any case preparation activity, the Producing Party

SHAW KELLER LLP

The Honorable Sherry R. Fallon
Page 2



shall make such objection known to the Receiving Party within five business days... (Protective Order, § 9(g))

**B. Background of the Dispute**

1. <u>MediaGrid Source Code.</u> The patents-in-suit implicate operation of Harmonic's MediaGrid system as a whole. The MediaGrid system comprises three distinct interconnected groups of computers or components (clients, content servers and content directors), ▇▇▇ (version 1.0, 2.0, 3.0) and many minor versions (e.g., version 2.1.3, 2.2).

2. <u>Avid's Request for Production of Code Portions.</u> Pursuant to the Protective Order, on November 16, 2012 Avid with its expert, Dr. Shahram Ghandeharizadeh (Professor of Computer Science at USC), identified and requested paper production of 51 source code files from among ▇▇▇ Avid's code request was the culmination of Avid's expert's full-day code inspection, after he attended two full-day source code depositions in which Harmonic witnesses identified code files performing the asserted claim elements.

3. <u>Harmonic's Refusal to Produce Code Portions.</u> Pursuant to the Protective Order, Harmonic had five days to produce or object to Avid's code production request. At Harmonic's request due to the Thanksgiving holiday, Avid agreed to give Harmonic until the following week to produce the code sections. On November 29, 2012, nearly two weeks after Avid's request, Harmonic's counsel advised it would not produce the selected code portions because it alleged (1) that the volume was too large, and (2) it did not believe Avid and its expert could have reviewed the requested source code.

Avid's counsel and expert reviewed the code for three full days, alone and with the guidance of Harmonic source code witnesses, to identify the 51 requested files. Avid's counsel estimates that ▇▇▇ Harmonic's counsel admitted that the code is "huge", but would not provide specifics to better frame the issue for the Court. The 51 files requested represent a small fraction of the total files in MediaGrid, and according to Harmonic's counsel ▇▇▇ Of the 51 requested files, Avid's counsel believes about ▇ are unique (e.g., about ▇ files are for different software components and about ▇ of the files are for similar components from different versions of the MediaGrid accused product). Once non-unique portions are discounted Avid's counsel estimates that there are less than ▇ unique code pages in its request.

4. <u>Avid's Compliance with Harmonic's Request for Code.</u> To provide context, Avid's request is proportionate to Harmonic's request. In mid-October, Harmonic's expert reviewed Avid's source code for three days. Harmonic thereafter requested production of 650 pages – 450 source code pages and 200 pages of source code related documentation. The files in Harmonic's request ranged in size from one page to over 60 pages, with source code related documentation in excess of 100 pages. Avid produced the requested code without dispute.

SHAW KELLER LLP
The Honorable Sherry R. Fallon
Page 3

**II. Issues Raised.** Avid's request for production of MediaGrid source code files constitutes "limited portions … reasonably necessary" for preparation of its infringement case under § 9(f) of the Protective Order.

First, Harmonic's argument that the size of Avid's request is more than "limited portions" is a red herring. The reality is that the 51 files requested represent only a tiny fraction of Harmonic's entire source code. Harmonic's counsel admitted that the code is "huge." Avid's counsel estimates the size of each version at thousands of files and tens of thousands of pages. Avid's request amounts to less than ▇ of the entire code. Moreover, Avid's request is on par with the percentage and volume of code Avid produced to Harmonic without dispute, and Harmonic is the accused infringer in this case, not Avid.

Second, to deflect Avid's argument regarding the tiny fraction of pages requested, Harmonic further argues that "limited portions" is restricted to portions of files identified by line number, and not portions of code on a file basis. Harmonic's argument is nonsensical, beyond any limitation of the Protective Order, and ignores choices software designers make about allocating functions among files, and how particular functions or other code elements are integrated in the broader code.

Third, Harmonic's refusal to produce these documents, requested more than three weeks ago, once again hampers Avid's ability to prosecute this case. Harmonic received all of the code it requested from Avid, but now refuses to fulfill its own corresponding obligations. Avid agreed to a one week extension on the premise that Harmonic was producing the documents, not so that it could delay two weeks to withhold production on purely volume-based grounds. Harmonic could have determined the size of the files in short order and have objected within the five day period required by the Protective Order.

Finally, Harmonic's belated production of 369 pages is in conflict with Harmonic's only objections – namely, that (1) the 1000 page volume as a whole was not a "limited portion", and (2) Avid's expert could not have reviewed 1000 pages. In other words, it is not clear how Harmonic made a decision that these 369 pages are a "limited portion" or that it now believes Avid's expert reviewed the 369 pages but not the remaining pages, and the time for new objections has long passed.

**III. Requested Relief.** For the foregoing reasons, Avid respectfully requests that the Court compel Harmonic to produce the limited portion of code Avid's expert has inspected and requested for production.

Respectfully submitted,

*/s/ David M. Fry*

David M. Fry (No. 5486)

cc: All counsel of record (via CM/ECF)