**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVID TECHNOLOGY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 11-1040-GMS-SRF |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| HARMONIC INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANTS'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

OF COUNSEL:

James C. Yoon
Jason M. Garr
Matthew K. Sumida
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California  94304-1050
Tel:  (650) 565-3645

Stefani E. Shanberg
Robin L. Brewer
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California  94105
Tel:  (415) 947-2000

Dated:  February 4, 2013

David E. Moore (#3983)
Jonathan A. Choa (#5319)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
jchoa@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Harmonic Inc.*

1092907 / 38568

## TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................. 1

II.  DISPUTED CLAIM TERMS FOR CONSTRUCTION .................................................. 1

     A.   "Independent Storage Units" (Claims 1, 6, and 18 of the '808 Patent;
          Claims 1, 16, 31, and 39 of the '309 Patent) ........................................................ 1

          1.   "The claimed systems, by virtue of its 'independent storage units,'
               *avoids global allocation of available storage . . .*" .................................. 2

          2.   "[T]he claimed system, by virtue of the 'independent' storage
               units, *avoids using a central controller* to access data . . .*"........................ 2

     B.   "Redundancy Information" (Claims 1, 2, 6, 7, 14, 18, and 19 of the '808
          Patent; Claims 31, 32, and 39 of the '309 Patent) ................................................ 4

     C.   "Nonsequentially" (Claims 1, 16, 33, and 36 of the '309 Patent) ........................ 6

     D.   "Identifier" (Claims 1, 6, and 18 of the '808 Patent; Claims 1, 16, 31, 34,
          35, and 37-39 of the '309 Patent) ........................................................................ 9

III. DISPUTED MEANS-PLUS-FUNCTION TERMS ...................................................... 11

     A.   "Means, operative in response to a request from one of the client systems,
          for retrieving the requested segment of the file from the storage unit using
          the information associating the identifier of each segment stored on the
          storage unit with the location of each segment on the storage unit" (Claim
          1 of the '808 Patent)........................................................................................... 11

     B.   "Means for sending the requested segment to the client system" (Claim 1
          of the '808 Patent)............................................................................................. 13

     C.   "Means for sending a request, for each segment of the data requested by
          the application, to the storage unit on which the segment is stored" (Claim
          6 of the '808 Patent)........................................................................................... 14

     D.   "Means for selecting one of the storage units on which the segment is
          stored such that a load of requests on the plurality of storage units is
          substantially balanced" (Claim 7 of the '808 Patent) ......................................... 15

     E.   "Means for scheduling the transfer of the data from the storage unit such
          that the storage unit efficiently transfers data" (Claims 10 & 12 of the '808
          Patent) ............................................................................................................... 16

     F.   "Means for distributing each segment, and the redundancy information for
          each segment, among the plurality of storage units by sending to the
          storage unit the segment of the data and the identifier of the segment" ............... 16

IV.  CONCLUSION ................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.*,
    412 F.3d 1291 (Fed. Cir. 2005) ................................................................. 11

*Finisar Corp. v. DirecTV Group, Inc.*,
    523 F.3d 1323 (Fed. Cir. 2008) ........................................................... 14, 15

*Honeywell Int'l, Inc., et al. v. ITT Indus., Inc.*,
    452 F.3d 1312 (Fed. Cir. 2006) .............................................................. 6, 9

*In re Aoyama*,
    656 F.3d 1293 (Fed. Cir. 2011) ................................................................. 11

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
    344 F.3d 1205 (Fed. Cir. 2003) ........................................................... 13, 16

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004) ................................................................... 9

*Nystrom v. Trex Co., Inc.*,
    424 F.3d 1136 (Fed. Cir. 2005) ................................................................... 5

*Symbol Techs., Inc. v. Opticon, Inc.*,
    935 F.2d 1569 (Fed. Cir. 1991) ........................................................... 11, 12

I.     **INTRODUCTION**

Avid's opening claim construction brief ignores and, at times, violates the fundamental

doctrines of claim construction in an improper attempt to broaden the scope of the '808 and '309

patents.  Specifically, in its brief, Avid seeks to reclaim subject matter that it clearly disavowed

in the prosecution of the patents and to offer claim constructions at odds with the specification

and claim language of the patents.  Harmonic respectfully requests that the Court reject Avid's

proposed claim construction of the patents and adopt the proposed construction set forth in

Harmonic's opening brief.

II.    **DISPUTED CLAIM TERMS FOR CONSTRUCTION**

   A.    **"Independent Storage Units" (Claims 1, 6, and 18 of the '808 Patent; Claims
         1, 16, 31, and 39 of the '309 Patent)**

| HARMONIC'S PROPOSED CONSTRUCTION | AVID'S PROPOSED CONSTRUCTION |
| --- | --- |
| storage units which are not centrally controlled and not part of a global allocation of available storage | storage units which exchange segments with clients across a network without the segments passing through a central controller, and whose memory addresses are not globally allocated |

In its opening brief, Avid admits that during the prosecution of the '808 patent that it

submitted statements to the patent office that defined "independent storage units" by disclaiming

coverage of systems that use "central control" and/or "global allocation" of storage.  D.I. 92,

Avid Br. at 5-7.  Avid, however, attempts to take back this admission and eviscerate the impact

of its disclaimer by mischaracterizing the prosecution history to limit the disclaimer to only

certain aspects of a storage unit and not the "claimed system."  This attempt is at odds with the

language of Avid's disclaimer to the patent office and the operation of the prior art device Avid

attempted to distinguish from with its disclaimer.

The prosecution history is clear.  Avid made the following express disclaimers regarding

the "claimed system:"

    **1.**     "The claimed system, by virtue of its 'independent' storage units, ***avoids global allocation of the available storage*** . . ."

    **2.**     "[T]he claimed system, by virtue of the 'independent' storage units, ***avoids using a central controller*** to access data . . ."

'808 Response to Office Action dated February 6, 2004 at 10-11 (emphasis added). The above disclaimer language is clear and absolute. The claimed system of the patents cannot cover "systems" that use "a global allocation of available storage" or a "central controller."

In its brief, Avid argues that Harmonic's construction is flawed because the phrase "no global allocation of available storage" is vague. The Court should reject this transparent attempt to take back statements Avid made to the patent office. The phrase "global allocation of available storage" was not coined by Harmonic. Avid itself used the phrase when it was attempting to distinguish its inventions from the prior art. *See* '808 Response to Office Action dated February 6, 2004 at 10 ("The claimed system, by virtue of its 'independent' storage units, ***avoids global allocation of the available storage***."); *id*. at 12 ("Thus, the limitations of each of claims 6 and 18 are such that storage units are independent, ***avoiding global allocation of storage*** and centralized control."); *id.* ("In particular, none of these references appears to provide independent storage units in a manner that ***avoids global allocation of storage*** and that avoids use of a central controller.").

In an attempt to rewrite the prosecution history, Avid now argues that it is the "memory addresses" not "available storage" that is not globally allocated. "Storage" is not the same as "memory addresses." Avid made a clear disavowal as to storage. Had Avid wanted to say "memory addresses", it could have done so, but it stated "storage."

The example given by Avid in support of its argument is ambiguous at best. The example does not state that there is no global allocation of memory addresses. Instead it states that the storage units are independent because the client knows certain information for retrieval

of a segment and the storage unit knows other information for retrieval of a segment.  This does not deal with allocating storage, but rather the location of identifying information.  Harmonic's construction should be adopted because Avid clearly disavowed "storage," not "memory addresses" during prosecution of the patents.

Similarly, Avid also argues that by no centralized control and avoiding use of a central controller, what Avid really meant was that the segment did not pass through a central controller, even though this argument is not made in the response to the office action.  Avid further argues that a distinction must be made between a client-side controller and a storage unit-side controller.  Again, this distinction was not made at the time.  Further, these arguments are inconsistent with the prior art Avid was trying to overcome, Boll (U.S. Patent No. 5,644,720).

Boll describes a client connecting to a central controller and, in response to a client request, the central controller responds to the client with identifying information for a selected server that corresponds to the client's request.  *See* Boll at 3:26-30, 6:61-67.  The client then connects directly to the server to complete the transaction.  *Id.* at 7:1-4.  Figure 1 of Boll shows the direct connection between the client and the server at 38.  *Id.* at 3:47-50.



Most importantly, in Boll, the data is not sent through the centralized communications

interface. *Id.* at 3:47-50, 7:1-4. The communications interface connects to clients to identify servers in response to client requests and connects to servers in order to know the information stored at the server and the server status, but data is not passed through the communications interface. *Id.* at 3:59-62.

> In response to Boll, Avid argued:

> Boll deals with distributing transaction requests for multiple clients to multiple servers. In Boll, a client asks a centralized interface 24 to provide access to a server and receives from this interface an identity or connection data for a server to which the client is assigned. The client then performs its transactions with the assigned server. In contrast, the present invention relates to a distributed storage system in which data for a file is distributed among multiple independent storage units. ***Boll's assignment of a client to a server through a centralized interface for its transaction in [sic] contrary to the claim limitations noted above***.

'808 Response to Office Action dated February 6, 2004 at 11 (emphasis added). Avid's disclaimer, therefore, extends beyond using a central controller to retrieve segments and includes any use of a central controller, including to identify storage units for the client to connect to for the retrieval of segments.

Avid's proposed construction should be rejected as inconsistent with arguments made during the prosecution of patents. Avid's disavowal was clear. Independent storage units requires avoiding global allocation of available storage and centralized control. To construe this term otherwise would allow Avid to reclaim scope that it gave up during prosecution.

**B.     "Redundancy Information" (Claims 1, 2, 6, 7, 14, 18, and 19 of the '808 Patent; Claims 31, 32, and 39 of the '309 Patent)**

| HARMONIC'S PROPOSED CONSTRUCTION | AVID'S PROPOSED CONSTRUCTION |
| --- | --- |
| a copy of each segment | a copy of a segment or information sufficient to recreate the segment |

The parties agree the construction of "redundancy information" includes "a copy of a segment." The parties dispute is whether the term also covers "information sufficient to recreate

the segment." Avid seeks this additional language to cover RAID systems (such as the accused

Harmonic system). In asserting this construction, Avid once again ignores the clear disavowal it

made during the prosecution of its '309 Patent. Avid's construction further fails because it is at

odds with the specification and teaching of the patents. Avid attempts to masks the deficiencies

of its construction by pointing to the definition of redundancy information from <u>another</u> patent

and the doctrine of claim differentiation. The other patent is irrelevant and cannot overcome the

disclaimer or specification of the Avid patents. Moreover, the Federal Circuit has declared that

claim differentiation does not trump either the clear meaning of the specification or Avid's

arguments in overcoming the cited prior art. *See Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1143

(Fed. Cir. 2005).

During the prosecution of the '309 Patent, Avid specifically disclaimed RAID. The

patent office rejected the pending claims of the '309 Patent on the ground that the Styczinski

prior art reference stored "redundancy information" in the form of parity information for each

segment. Parity information is essential to RAID systems. Avid argued that such parity

information (*e.g.*, information from a segment) was not the invention because Styczinski did not

store a "***copy of the segment***" and did not distribute such copies "among the plurality of storage

units." '309 Response to Office Action (April 18, 2008), at 3. Avid explained that "[t]o the

extent that the write assist disk [of Styczinski] contains copies of segments, these copies are not

permanent and are not *distributed among the plurality of storage units*. The parity information

referred to by Styczinski, while distributed among its service units, are not ***copies*** of the data

segments." *Id.* at 4 (emphasis added).

Further, the specification and claims of the '808 and '309 Patents support that

"redundancy information" is only "a copy of each segment." The specification uniformly

-5-

teaches that the claimed system divides data into segments and stores *at least two* copies of each individual segment in different storage units of the system. '808 Patent at 6:55-63; *Honeywell Int'l, Inc., et al. v. ITT Indus., Inc.*, 452 F.3d 1312, 1316 (Fed. Cir. 2006). The specification requires the invention to store a redundant copy of each individual segment in a different storage unit from the original copy to perform the data recovery and load balancing functions of the patents. '808 Patent at 4:22-29; 11:7-23, 21:51-23:32. Further, the inventors were concerned about the amount of time to a double fault failure, of which the mean time to repair had a significant impact. *See id.* at 9:60-65. According to the specification, the longer it takes to repair a disk, the sooner a double fault failure will occur and information will be permanently lost. *Id.* Disk recovery is performed through identification and recopying of the remaining copy in the system. *Id.* at 15:40-6:41.

Harmonic's construction is further confirmed by the claims, which require distribution among a plurality of storage units. *See* '808 Patent at 28:10-12 (claim 1), 28:57-59 (claim 6), 30:35-37 (claim 18); *see also* '309 Patent at 30:20-22 ("wherein each segment and redundancy information for each segment are distributed among the plurality of storage units") (Claim 31). The only thing distributed among the storage units as described in the specification are copies of segments n. '808 Patent at Abstract, 2:29-36, 3:14-15, 4:22-29, and 13:20-22.

C.      **"Nonsequentially" (Claims 1, 16, 33, and 36 of the '309 Patent)**

| HARMONIC'S PROPOSED CONSTRUCTION | AVID'S PROPOSED CONSTRUCTION |
| --- | --- |
| randomly or pseudorandomly independent of prior or subsequent selection | not following a permanent sequence |

Harmonic's construction that "nonsequentially" means "randomly or pseudorandomly independent of prior or subsequent selection" is taken directly from the intrinsic evidence. Avid, on the other hand, argues that "nonsequentially" means "not following a permanent sequence."

This ignores the disclosures of the specification.  Instead of reading the claims in light of the specification, as required by the Federal Circuit, Avid argues for a construction detached from the disclosures in the specification.

For example, in its opening brief, Avid describes the convoy effect problem presented in the specification and claims the solution, as explained in the specification, "is for segments from different files to not *always* be distributed to storage units according to the *same* sequence of units."  Avid Br. at 11.  Avid goes to great lengths to characterize the solution as relating to sequences and, in the process, avoids saying the actual solution described in the patent, which is "[i]n order to overcome the convoy effect, data may be striped in a ***random*** fashion, i.e., segments of a data file is stored in a ***random*** order among the disks rather than sequentially." '808 Patent at 1:64-67.  The specification, therefore, defines the opposite of sequentially (i.e., nonsequentially) as random.

Avid also relies upon Figures 1 and 2 as supporting its construction of "nonsequentially," but does not cite the actual specification for the description of the distribution of segments.  Avid Br. at 12.  As with the convoy effect, Figures 1 and 2 discuss random distribution, not a form of sequence.  With respect to Figure 1, the specification states:

> As an example of this ***random*** distribution of copies of segments of data is shown in FIG. 1.  In FIG 1, four storage units 42, labeled w, x, y, and z, store data which is divided into four segments labeled 1, 2, 3, and 4.  An example ***random*** distribution of the segments and their copies is shown, where: segments 1 and 3 are stored on storage unit w; segments 3 and 2 are stored on storage unit x; segments 4 and 1 are stored on storage unit y; and segments 2 and 4 are stored on storage unit z.

'808 Patent at 7:5-13 (emphasis added).  With respect to Figure 2, the specification states: "The ***random*** distribution of segments may be represented in and tracked by segment table 90, or catalog [sic], such as shown in FIG. 2."  *Id.* at 7:14-16.  The support relied upon by Avid from the patents actually supports Harmonic's construction of the term "nonsequentially."

-7-

Further, at no point does the specification describe the storage of segments as "not following a permanent sequence" or discuss storage in a sequence. The patent only describes segments that are distributed randomly or pseudorandomly independent of prior or subsequent selection. *See, e.g.*, '808 patent at 2:20-29 ("Data is *randomly distributed* on multiple storage units....The selection of each storage unit on which a copy of a segment is stored is *random or pseudorandom* and may be independent of the storage units on which other segments of the data are stored."); *id.* at 6:5-6 ("The selection of each storage unit is *random or pseudorandom*..."); *id.* at 6:58-61 ("The selection of the storage units on which the copies of a segment are stored is *random or pseudorandom* and may be independent of the storage units on which other segments of the data are stored."); *id.* at 7:5-6 ("An example of this *random* distribution of copies of segments of data is shown in FIG. 1."); *id.* at 8:32-35 ("Referring now to FIG. 3, an example process for storing multiple copies of segments of data in a *randomly* distributed manner over the several storage units will now be described in more detail."); *id.* at 9:15-18 ("Selection of the storage units for the copies of one segment is *random or pseudorandom*. This selection may be independent of the selection made for a previous or subsequent segment."). Storage in a sequence, even if it is not a permanent sequence, is the antithesis of randomly or pseudorandomly storing segments independent of where other segments are stored, as explicitly described in the specification. Avid's construction is not supported by the specification, but in fact contradicts the specification.

Avid also claims it is entitled to the full scope of the meaning of "nonsequentially" divorced from the specification because there is no clear disavowal in the specification. Avid Br. at 12. The Federal Circuit, however, has recognized that if the specification clearly indicates that the described embodiment is the only embodiment the claims cover, the claims are properly

limited to that embodiment even if the claim language, removed from the context of the specification, could be read more broadly. *See Honeywell,* 452 F.3d at 1316 (construing "fuel injection system component" to mean "fuel filter" where "[t]he entire specification of the '879 patent, as well as the sole drawing, describe the elements and operation of a fuel filter with electrically conductive fibers."); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1348-49 (Fed. Cir. 2004) (construing "sending," "transmitting," and "receiving" to require communications "over a telephone line and not a packet-switched network" where the specification "repeatedly and consistently describes" communications over a telephone line).

### D.   "Identifier" (Claims 1, 6, and 18 of the '808 Patent; Claims 1, 16, 31, 34, 35, and 37-39 of the '309 Patent)

| HARMONIC'S PROPOSED CONSTRUCTION | AVID'S PROPOSED CONSTRUCTION |
| --- | --- |
| a unique identifier for the segment that is a combination of a unique identifier for the source, such as a file, and a segment number | information sufficient to distinguish |

Harmonic's construction of "identifier" is consistent with the intrinsic evidence which confirms that it is a combination of unique identifier for the source and a segment number.  In contrast, Avid's construction of "identifier" as "information sufficient to distinguish" is not supported by the intrinsic evidence and is devoid of meaning.  Avid Br. at 8-9.

Avid first claims that Harmonic's construction would exclude a preferred embodiment and points to Figure 2.  Avid Br. at 7-8.  Avid claims the first column is the segment identifier. *Id.* at 8.  No mention, however, is made of segment identifier in describing Figure 2.  Instead, it simply states "each segment, represented by a row 92, how two copies, called A and B, which are represented by columns 94."  '808 Patent at 7:17-19.  The specification makes no representation that Figure 2 depicts segment identifiers.  Avid's argument should, therefore, be rejected.

Avid next argues that Harmonic's construction of "identifier" ignores the broader use of

the term in the specification. Avid Br. at 8. In support of this argument, Avid points to discussion of an identifier of source material (i.e., a filename). *Id.* The identifier at issue in the claims, however, relates to an identifier for a segment, and a source material identifier is irrelevant to the construction of this term. The specification is clear that with respect to segment identifiers, the patentees acted as their own lexicographers:

> In order to access the segments of data, each segment should have a unique identifier. The copies of the segments may have the same unique identifier. The unique identifier for a segment is a combination of a unique identifier for the source, such as a file, and a segment number.

'808 Patent at 7:47-51. The patentees did not use permissive language. Instead each segment needs a unique identifier and the unique identifier is "a combination of a unique identifier for the source, such as a file, and a segment number." *Id.* The patentees were explicit on this point and defined the term unique identifier.

Avid argues that this is not a definition, but is simply an embodiment. This is belied by looking at the intrinsic evidence as the specification describes no other embodiment and the patentees did not use exemplary or permissive language. Rather, the patentees said the unique identifier *is* and provided a definition for unique identifier.

Finally, Avid argues that "the specification discloses segment identifiers that would be excluded by Harmonic's proposed construction," but provides no cite in support of this statement. Avid Br. at 9. Avid goes on to claim that the portion of the specification cited by both parties is merely part of an example. The quoted language, however, does not relate to a specific figure or example. The cited language is the patentees describing a necessary part of their invention and defining what that term means in their invention. Harmonic's construction should therefore be adopted as consistent with the intrinsic evidence.

### III.   DISPUTED MEANS-PLUS-FUNCTION TERMS

**A.**   **"Means, operative in response to a request from one of the client systems, for retrieving the requested segment of the file from the storage unit using the information associating the identifier of each segment stored on the storage unit with the location of each segment on the storage unit" (Claim 1 of the '808 Patent)**

It is a bedrock principle in construing means-plus-function limitations that the structure corresponding to the function as disclosed in the specification must be identified. *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1575 (Fed. Cir. 1991). The structure disclosed in the specification is deemed to be "corresponding" structure if the specification "clearly links or associates that structure to the function recited in the claim." *In re Aoyama*, 656 F.3d 1293, 1297 (Fed. Cir. 2011) (internal quotations omitted). "While corresponding structure need not include all things necessary to enable the claimed invention to work, it must include all structure that actually performs the recited function." *Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005).

The parties largely agree on the corresponding structure, but disagree as to whether prioritization of the disk queue is necessary for the recited function. Avid identifies only the generic structure required to retrieve a segment from a disk, but fails to recognize the role described in the specification for retrieving a segment from a disk. Specifically, Avid argues that prioritization is not of the function. Avid Br. at 14. In describing the invention, however, Avid stated the patents "are directed to and describe a high-performance distributed data storage system for transferring multiple high-bandwidth streams of data between multiple storage units and multiple clients, or client applications, in a scalable and reliable manner." *Id.* at 1. Avid continued "[t]he invention can be used to edit, manage and deliver media files, such as for broadcast television, where fast and reliable access to large files is necessary." *Id.* The inventions disclosed in the specification do not just relate to the retrieval and transfer of data, but

rather the retrieval and transfer of data for the specific purpose of providing "multiple high-bandwidth streams of data between multiple storage units and multiple clients." Prioritization of retrieval of the segments is necessary to enable the claimed invention.

The patent describes the queue 48 as maintaining two queues, one for requests for disk access and one for network transfers, which is described in Figure 19. '808 Patent at 11:1-6. Since the function relates to retrieving the segment stored on the storage unit, the segment is transferred from its location in storage to a data buffer, which implicates the disk queue 300. *Id.* at 24:26-27. Avid argues that disk queue 300 is only an embodiment of queue 48. Avid Br. at 14. The question in interpreting means-plus-function limitations is not whether it is only an exemplary embodiment, but rather identification of the structure disclosed in the specification. Since disk queue 300 is the only structure disclosed for queue 48, it is properly part of the corresponding structure. *Symbol Techs.*, 935 F.2d at 1575.

The prioritization of disk queue 300 is accomplished through subqueues and corresponding fields. '808 Patent at 23:39-24:26. For example, the subqueue for playback has the highest priority. *Id.* This separates the time-sensitive requests with specific due times from other requests and ensures streaming of the media at the client for editing without interruption. *Id.* at 23:39-44. In addition, the subqueue also has a priority field so that requests within the playback subqueue can be prioritized and the most urgent requests are handled first. *Id.* at 23:54-59. The capture subqueue, which relates to storing, has the next priority, followed by the authoring subqueue, and finally the service and maintenance subqueue. Disk queue 300, its subqueues, and related fields are illustrated in Figure 19.

As prioritization is necessary to enable the claimed inventions and is clearly linked to the recited function, Harmonic's construction should be adopted.

B.     **"Means for sending the requested segment to the client system" (Claim 1 of the '808 Patent)**

The parties agree as to certain portions of the corresponding structure, but disagree about the specific implementation and algorithms disclosed in the specification for sending the requested segment to the client system.  For example, Avid identifies the disk queue and the network queue, but claims this does not include the specific implementation of the disk queue and network queue disclosed in the specification.  Avid opted to use means-plus-function language and  "[t]he price that must be paid for use of that convenience is limitation of the claim to the means specified in the written description and equivalents thereof." *Med. Instrumentation & Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205, 1211 (Fed. Cir. 2003).  Avid cannot identify part of the structure, the generic part, and ignore the specific structure disclosed in the specification.

With respect to the network and disk queues, Avid again argues that prioritization is not part of the recited function.  Avid Br. at 15.  The function, however, relates to sending the segment to the client.  As discussed above, the inventions disclosed in the specification do not just relate to the retrieval and transfer of data, but rather the retrieval and transfer of data for the specific purpose of providing "multiple high-bandwidth streams of data between multiple storage units and multiple clients."  Prioritization of sending of the segments is necessary to enable the claimed invention.  The specification explains that the subqueues include the information indicating "the client making the request and the requested operation" and the priority for processing each request.  '808 Patent at 23:54-59.  Without such information, the claimed system would not be able to send the requested segment to the client system or ensure the highest priority request is processed first.  Long Decl. at ¶¶ 52, 62-63.

Further, with respect to sending the segment to the client, the specification discloses

-13-

scheduling the transfer of data over the network to ensure efficient receipt by the client of the

segment. The specification discloses two methods for scheduling the transfer of data. The first

method disclosed in the specification uses a token so that the client receives data from one

storage unit and the storage unit is only sending data to that client. '808 Patent at 24:6-25:5.

Once the storage unit is finished sending the data, it returns the token to the client so the client

can send it to the next storage unit it needs to transfer data from. *Id.* The second method of

scheduling the transfer of data over the network by the storage unit described in the specification

relates to establishing a communications channel and the order to process requests. *Id.* at Figure

21, 25:46-26:10. Scheduling the transfer of data is necessary to enable the claimed invention and

is corresponding structure to the recited function. Without either the token described at Col.

24:60-25:5 or the algorithm of Figure 21, the process of the claimed invention would not have

the capability of performing the claimed "sending" function. Long Decl. at ¶¶ 64-66; *Finisar*

*Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008).

C.    **"Means for sending a request, for each segment of the data requested by the application, to the storage unit on which the segment is stored" (Claim 6 of the '808 Patent)**

The fundamental argument between the parties is whether the corresponding structure for

this function includes selecting a storage unit. Avid's position is that it does not. Avid Br. at 16.

According to the specification, however, the first step in sending a request to the storage unit is

to select a storage unit to send the request to. '808 patent at 21:10-12. Since each segment is

stored in the system twice, the segment table will identify two storage units where the segment is

stored. *Id.* at 7:14-28. The client must then decide which storage unit it wants to get the segment

from, as set forth in step 272 from Figure 16. *Id.* at 21:10-12.

Avid incorrectly omits step 272 from the process. Avid's proposed construction thus

ignores the specification, resulting in legal error. The claimed function of "sending a request to

the storage unit on which the segment is stored" cannot be performed without selecting the

storage unit and then sending a pre-read request to the selected storage unit.  Long Decl. at ¶¶

73-74.  The recited function cannot be performed without first selecting the storage unit.  '808

Patent at 21:10-12 ("When the client requests a segment of data for a particular data stream, the

client selects a storage unit, in step 272, for the segment that is requested."); Long Decl. at ¶ 73.

### D.     "Means for selecting one of the storage units on which the segment is stored such that a load of requests on the plurality of storage units is substantially balanced" (Claim 7 of the '808 Patent)

The parties agree Col. 23:6-32 discloses corresponding structure for the recited function.

Avid, however, identifies this as the only disclosure in the specification relating to selecting

storage units.  Avid misinterprets the function and limits the corresponding structure to choosing

a storage unit according to various load balancing criteria instead of selecting a storage unit such

that the load of requests is substantially balanced.  Avid Br. at 16.  Avid omits the preferred

embodiment in Figure 17.

The specification, however, equates selecting the storage unit with the shortest queue as

the preferred method for load balancing.  *See* '808 Patent at 2:32-37, 6:12-26, 8:10-16.  Figure

17 discloses a method for selecting the storage unit with the shortest queue from the perspective

of a client system.  '808 Patent at 21:12-15 (The selection of storage units "will be described in

more detail below in connection with FIGS. 17 and 18.  In general, the storage unit with the

shortest queue 48 (FIG. 1) is selected.").  Avid identifies Col. 8:9-17, which references selecting

the shortest queue for load balancing purposes, but fails to include the algorithm disclosed in the

specification for accomplishing this method of load balancing.  *Finisair*, 523 F.3d at 1340.  The

corresponding structure for the recited function therefore includes Figure 17 and its

corresponding description at Col. 21:51-22:26.

-15-

E.      **"Means for scheduling the transfer of the data from the storage unit such that the storage unit efficiently transfers data" (Claims 10 & 12 of the '808 Patent)**

Avid again only identifies generic structure for transferring data and ignores the specific disclosures in the specification for scheduling the transfer of data and efficiently transferring data. Avid again argues that Harmonic has improperly included structure relating to prioritization of requests on the network queue. Avid again identifies queue 48 as corresponding structure, but fails to include the more specifically disclosed structure for implementing queue 48, including network queue 320. Avid Br. at 17. Avid opted to use means-plus-function language and now refuses to pay the piper. *See Med. Instrumentation*, 344 F.3d at 1211. The structure disclosed in the specification for queue 48 includes network queue 320. Further, the claimed function of "scheduling the transfer of the data from the storage unit such that the storage unit efficiently transfers data," cannot be performed without queue 48 and the network queue 320 that prioritizes network transfers. Long Decl. at ¶ 90.

Avid also ignores half of the function and identifies no structure relating to the "efficiently transfers data" portion of the function. The specification discloses "efficiently transfers data" as an algorithm to schedule the transfer of data over the network. '808 Patent at 24:48-50 ("Data transfers between the storage units and clients over the computer network may be scheduled to improve efficiency."). As discussed above, the specification only discloses two algorithms for scheduling the transfer of data, which represent the corresponding structure. *Id.* at 24:6-25:5, 25:6-26:10, and Figs. 20-21; *see also* Long Decl. at ¶¶ 91-95. Harmonic's proposed construction should be adopted.

F.      **"Means for distributing each segment, and the redundancy information for each segment, among the plurality of storage units by sending to the storage unit the segment of the data and the identifier of the segment"**

The disagreement between the parties with respect to this function again comes down to

-16-

whether selecting a storage unit is necessary structure for the recited function.  This time, however, it relates to storing a segment rather than retrieving a segment.  Part of distribution is identifying where the distributed object is to go.  The specification specifically discloses randomly or pseudo-randomly selecting storage units.  *See, e.g.*, '808 Patent at 8:32-35.  Therefore, the claimed function of "distributing each segment, and the redundancy information for each segment, among the plurality of storage units by sending to the storage unit the segment of the data and the identifier of the segment" requires selecting the storage units where the segment and redundancy information should be stored.  Long Decl. at ¶ 101.  Further, dependent claim 19 confirms that the means for distributing includes selecting storage units.  '808 Patent at 30:56-58.  Selecting the storage units where the segment and redundancy information should be stored is clearly linked to the distributing means and constitutes part of the corresponding structure for this limitation.  Long Decl. at ¶ 101.  Harmonic's proposed construction should therefore be adopted.

## IV.    CONCLUSION

        For the foregoing reasons, Harmonic respectfully requests that the Court construe the above terms according to Harmonic's proposed constructions.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

James C. Yoon
Jason M. Garr
Matthew K. Sumida
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California  94304-1050
Tel:  (650) 565-3645

Stefani E. Shanberg
Robin L. Brewer
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California  94105
Tel:  (415) 947-2000

Dated:  February 4, 2013
1092907 / 38568

By:   _/s/ David E. Moore_____
       David E. Moore (#3983)
       Jonathan A. Choa (#5319)
       Bindu A. Palapura (#5370)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE  19801
       Tel:  (302) 984-6000
       dmoore@potteranderson.com
       jchoa@potteranderson.com
       bpalapura@potteranderson.com

*Attorneys for Defendant Harmonic Inc.*

-18-

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on February 4, 2013, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on February 4, 2013, the attached document was Electronically

Mailed to the following person(s):

John W. Shaw
Karen E. Keller
Andrew Russell
Shaw Keller LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
SKAvid@shawkeller.com

Robert A. Schwinger
Paul J. Tanck
Michael S. Davi
Tod M. Melgar
Kamran Vakili
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
rschwinger@chadbourne.com
ptanck@chadbourne.com
mdavi@chadbourne.com
tmelgar@chadbourne.com
KVakili@chadbourne.com

David Howard Evans
Chadbourne & Parke LLP
1200 New Hampshire Avenue, NW
Washington, DC  20036
devans@chadbourne.com

By:   /s/ David E. Moore
    David E. Moore
    Jonathan A. Choa
    Bindu A. Palapura
    POTTER ANDERSON & CORROON LLP
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    jchoa@potteranderson.com
    bpalapura@potteranderson.com

1037642/38568