IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVID TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-1040-GMS-SRF |
| | ) | |
| HARMONIC INC., | ) | |
| | ) | |
| Defendant. | ) | |

**AVID'S COMMENTS AND OBJECTIONS TO
HARMONIC'S TECHNOLOGY TUTORIAL**

Pursuant to the Court's June 4, 2012 Scheduling Order, Avid hereby submits its comments and objections to Harmonic's technology tutorial. Avid's comments and objections correspond to the numbered slides attached to Harmonic's tutorial, submitted to the Court on January 16, 2013.

**General Objections**

Rather than focusing on the technology at issue—as the Court requested in its Scheduling Order—Harmonic uses its tutorial to attempt to argue invalidity and claim construction positions. In particular, Harmonic makes repeated unsupported assertions about technology being known in the prior art. For example, in Slide 6, Harmonic notes that the tutorial covers the following topics: database architectures, media files, data striping, fault tolerance, and load balancing, but then states that "[t]he technology described in each of these topics existed prior to the alleged inventions of the '808 and '309 patents." In Slide 13, Harmonic states: "These distributed file systems existed long before the priority date of the '808 and '309 patents." In Slide 23, Harmonic states: "Systems for storing media files existed many years before the alleged

inventions of the '808 and '309 patents." In Slide 31, Harmonic states that "the storage industry determined years before the alleged inventions of the '309 and '808 patents that segments may be stored randomly rather than sequentially." These statements are vague and conclusory; they do not belong in the technology tutorial. Avid disputes that the inventions of the patents-in-suit were known in the prior art. Harmonic's tutorial is incomplete, misleading, and does not accurately describe the technology disclosed in the '808 and '309 Patents.

## SLIDE 6

Harmonic notes that the tutorial covers the following topics: database architectures, media files, data striping, fault tolerance, and load balancing, but then states that "[t]he technology described in each of these topics existed prior to the alleged inventions of the '808 and '309 patents." Harmonic has not provided any support for this vague assertion of the state of the prior art at the time of the invention. The parties disagree as to the scope and content of the prior art.

## SLIDES 13–20

Harmonic asserts that the distributed file system shown in Slide 13 "existed long before the priority date of the '808 and '309 patents," but does not provide any support for this assertion. Again, the parties disagree as to the scope and content of the prior art.

## SLIDE 20

Slide 20 asserts that in a parallel file system, "the client can request data from storage devices in parallel, i.e., the client receives data from multiple storage devices as the same time." But network communications are never actually "at the same time." A connection carries only one message at a time, and each message must be transmitted, stored, and forwarded through a

switch that must be managed to avoid losing channel time, and thus avoid reducing performance to an unacceptable level. Additionally, each client can receive only one message at a time, and the order in which messages are created and sent to each client must be carefully controlled to avoid conflicts.

### SLIDES 23–24

Harmonic states that files are broken into segments to "increase the speed at which a media file may be stored and retrieved." File systems may break files into segments for many reasons other than speed of access, including for purposes of organization and to reduce file management overhead.

### SLIDE 25

Harmonic states that if "the system is set-up to allow it, multiple segments of a media file may also be returned to a client in parallel." This description does not provide sufficient detail as to how multiple segments are returned to a client in parallel, nor does it describe how the system locates segments and causes them to be accessed by the appropriate storage units at the appropriate times. Harmonic's description of the system is therefore incomplete.

### SLIDES 26–27

Contrary to Harmonics statements in these slides, real-time editing is not similar to streaming. Streaming generally refers to providing one video/audio combined stream with no included cuts or changes from one stream to another. Real-time editing includes additional challenges and issues that are not present with streaming, including bringing together multiple, independent streams of video and audio, and cutting from one source to another without adding significant latency.

**SLIDE 30**

Harmonic's commentary on slide 30 is imprecise and incomplete. This slide does not adequately explain the convoy effect, and it is not clear how "the queue moves from storage device to storage device." The convoy effect is accurately explained in the specification of the '808 and '309 patents, (*see, e.g.* '808 patent, 1:55–2:5) and in Avid's technology tutorial.

**SLIDE 31**

Harmonic states that "the storage industry determined years before the alleged inventions of the '309 and '808 patents that segments may be stored randomly rather than sequentially." Once again, Harmonic has not provided any support for this vague assertion of the state of the prior art at the time of the invention. Again, the parties disagree as to the scope and content of the prior art.

**SLIDE 34**

Slide 34 implies that mirroring was performed randomly over segments. But Harmonic has not provided any evidence that such an operation was being performed at the time of the invention.

**SLIDES 39–40**

These slides describe a method of restoring data that is covered by the '309 and '808 Patents; Harmonic has provided no evidence that this method existed in the prior art.

**SLIDE 44**

Harmonic asserts that "[f]or many years prior to the alleged inventions of the '808 and '309 patents, companies in the field of the patents were focused on load balancing." Harmonic

has not provided any support for this statement. And even if the statement is accurate, it does not shed any light on the inventions described in the patents.

                                              SHAW KELLER LLP

                                              */s/ Andrew E. Russell*
                                              John W. Shaw (No. 3362)
                                              Karen E. Keller (No. 4489)
                                              Andrew E. Russell (No. 5382)
                                              David M. Fry (No. 5486)
                                              SHAW KELLER LLP
                                              300 Delaware Avenue, Suite 1120
                                              Wilmington, DE 19801
                                              (302) 298-0700
                                              arussell@shawkeller.com

OF COUNSEL:                                  *Attorneys for Plaintiff Avid Technology, Inc.*
Robert A. Schwinger
Tod Melgar
Michael Davi
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
(212) 408-5100

David H. Evans
CHADBOURNE & PARKE LLP
1200 New Hampshire Ave., NW
Washington, DC  20036
(202) 974-5600

Dated:  February 4, 2013