IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVID TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-1040-GMS |
| | ) | |
| HARMONIC INC., | ) | |
| | ) | |
| Defendant. | ) | |

**AVID TECHNOLOGY, INC.'S MOTION TO PREVENT DEFENDANT
FROM REARGUING CLAIM CONSTRUCTION AND/OR FROM
<u>ARGUING CLAIM CONSTRUCTION TO THE JURY</u>**

Defendant Harmonic Inc. ("Harmonic") has prepared demonstrative slides for use in its

opening statement, and is preparing to argue to the jury, that *the Court construed* "independent

storage units" to mean:

> systems with "independent storage units" cannot use a central controller to
> access data, and, in particular, cannot use a central controller that identifies
> the storage unit on which data is stored in response to client requests.

This was not the Court's claim construction, and presenting this theory to the jury is

unfair and prejudicial. At the urging of Harmonic, the Court construed the term "independent

storage units" to mean "storage units which are not centrally controlled and whose memory

addresses are not globally allocated." (D.I. 116 at 1). Harmonic did not move for reargument or

clarification of the Court's claim construction order. At no time did it ever seek a construction of

the nature it now plans to urge to the jury. Avid prepared for trial using the Court's claim

construction as given.

In meet-and-confer sessions, Harmonic now claims that it is not proposing a new

construction but that it is merely "applying the Court's claim construction." But Harmonic has

proposed demonstrative slide after demonstrative slide[1] that lay out its explanation of what a

"central controller" is (even though the term "controller", let alone "central controller", is not

part of the patent claims or part of the claim construction) and why, according to Harmonic, the

claim scope is limited to systems that do not "use a central controller that identifies the storage

unit on which data is stored in response to client requests." (Exh. A, slide 7 (stating that "The

patents: Do not cover systems that 'use a central controller to access data'" and "Do not cover

systems that "use a central controller that identifies the storage unit on which data is stored in

response to client requests").[2] The Court's actual construction of "independent storage units" –

that the independent storage units are not centrally controlled – does not appear one time in

Harmonic's opening presentation.

        Harmonic is, in short, attempting to reargue the claim construction. Harmonic uses

buzzwords to suggest this is not so, but its buzzwords only hide its real intent. Harmonic, for

example, claims that it is only applying the claims as construed in light of an alleged prosecution

history disclaimer. Yet Harmonic never once proposed a single jury instruction that would – if

this were truly a jury issue and not a claim construction issue – provide the jury any guidance on

what a prosecution history disclaimer is or how to apply it.

        Moreover, Harmonic's writings tip its hand as to the true nature of its tactics.  For

example, Harmonic has objected to giving the jury a glossary of construed patent terms unless

Avid agreed to include the language now in dispute, as if it were the Court's claim construction.

Harmonic has also claimed in its pre-trial brief on page 4 that "the Court construed" the claims in

---

[1]     Selected Harmonic demonstratives are attached as Exhibit A.
[2]     Harmonic does not even fully quote the prosecution history.  As shown on its slide 7
(Exh. A), the patent applicants did not disclaim any and all use of a 'central controller.'  Rather,
they stated:  "Clients do not issue requests to a central controller that in turn identifies storage
units that store the data *and issues requests to the storage units*."

this manner, when no such construction was urged or adopted. Further, Harmonic recently proposed a revised jury instruction (Exh. B) which asserts that the Court construed "independent storage units" to have these characteristics, again when no such construction was urged or adopted. These actions illustrate the true nature of Harmonic's planned defense – rearguing the claim construction to the jury.

The words in Harmonic's newly proposed construction can, without question, be found as part of the Court's footnote explanation of its claim construction order. They are not part of the construction itself, however, for good reason – adopting these words as Harmonic now urges is facially inconsistent with the patent specification and the allowed claims. (*See, e.g.*, '309 Patent at Fig. 1, 6:54-57, 18:51-55, and claims 4 and 19, respectively.)

Specifically, dependent claims 4 and 19 of the '309 patent expressly cover a "central database" containing a "catalog" that is "accessible by all clients." (*Id.*) As agreed in the Amended Joint Claim Construction Statement, the claimed catalog, stored in the central database, is composed of segment tables that identify the storage units on which segments of data are stored. (D.I. 86 at 2; *see also* '309 patent at 6:54-57, 7:19-21 and 7:35-37.) If the Court had construed the independent claims to bar a central database for identifying the storage units on which segments are stored, as Harmonic now seeks to argue, then claims 4 and 19 of the '309 patent would be rendered meaningless because they would directly conflict with the independent claims. In short, Harmonic is seeking a new construction which – had it been timely raised – would have been rejected.

After the Court's clear claim construction, there should be no *factual* issue in this case for the jury to decide about whether the inventors disclaimed any patent scope. The only issue should be whether there are alleged "independent storage units" in the accused products, e.g.,

whether the accused structures utilize "storage units which are not centrally controlled and whose memory addresses are not globally allocated." That is the claim construction Avid's expert used in his analyses and in Avid's preparations for trial.

For all of these reasons, Harmonic should not be permitted to reargue claim construction now or to argue its new construction theory to the jury.

Respectfully submitted,

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
*Attorneys for Plaintiff Avid Technology, Inc.*

OF COUNSEL:
Robert A. Schwinger
Tod M. Melgar
Michael S. Davi
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
(212) 408-5100

David H. Evans
CHADBOURNE & PARKE LLP
1200 New Hampshire Ave., NW
Washington, DC  20036
(202) 974-5600

Dated: January 22, 2014

# EXHIBIT A

# Harmonic's Opening Statement

# Avid's Statement to the U.S. Patent Office

*Avid Document*



*Source: JX-3 at AVID0000198*

"[T]he claimed system, by virtue of the 'independent' storage units, <u>avoids using a central controller to access data</u>."

3

# Companies in This Case





**Defendant**



**Plaintiff**

## Avid's Statement to the U.S. Patent Office

*Avid Document*

FEB-06-04 FRI 03:48 PM  AVID TECH LEGAL        FAX NO. 978 851 7216           P. 12

Appl. No. 10/145,695
Reply Filed: Feb. 6, 2004
Office Action of Oct. 27, 2003

Because no rejection is based on Massiglia or other facts about RAID techniques that were asserted in the Office Action, it is unclear why this information is in the Office Action. Applicant believes no further commentary is required.

Rejection of Claims 1- 5 Under 35 U.S.C. §§102 and 103

Claims 1-2 and 5 were rejected under 35 U.S.C. §102 in view of so-called Admitted Prior Art ("APA"). Claims 1-2 and 4-5 also were rejected under 35 U.S.C. §102 in view of U.S. Patent 5,933,603 ("Vahalia"). Claim 3 also was rejected under 35 U.S.C. §103 in view of Vahalia and U.S. Patent 5,644,720 ("Boll").

In independent claim 1 as amended, "data is stored on [a] plurality of [independent] storage units in files, wherein each file includes segments of data and redundancy information for each segment, wherein each segment has an identifier." For each file, "the segments and the redundancy information for each segment are distributed among the plurality of storage units." Each storage unit "maintain[s] information associating the identifier of each segment stored on the storage unit with the location of each segment on the storage unit." Storage units "receive[s] . . . request[s] from one of the client systems for a segment of a file, wherein a request includes the identifier of the segment of the file." A storage unit, "in response to a request from one of the client systems for a segment of a file, [retrieves] the requested segment of the file from the storage unit using the information associating the identifier of each segment stored on the storage unit with the location of each segment on the storage unit."

The claimed system, by virtue of its "independent" storage units, avoids global allocation of the available storage. In particular, the storage units are independent because clients are aware of "identifiers" of segments and storage units on which segments are stored. The "location of each segment on [each] storage unit" is maintained at the storage unit on which the segment it is stored.

Further, the claimed system, by virtue of the "independent" storage units, avoids using a central controller to access data. In particular, storage units "receiv[e] . . . request[s] from one of the client systems for a segment of a file." Clients do not issue requests to a central controller that in turn identifies storage units that store the data and issues requests to storage units.

Each storage unit thus operates independently of the other storage units.

Page 10 of 13

PAGE 12/15 * RCVD AT 2/6/2004 3:45:51 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/1 * DNIS:8730306 * CSID:978 851 7216 * DURATION (mm-ss):06-00

AVID0000198

> "[T]he claimed system, by virtue of the 'independent' storage units, <u>avoids using a central controller to access data</u>."

**'808 & '309 Patents**



The patents:

- Do not cover systems that "use a central controller to access data"

- Do not cover systems that "use a central controller that identifies the storage unit on which data is stored in response to client requests"

*Source: JX-1 ('808 patent), JX-2 ('309 patent)*

7

# Key Prior Art References



**July 31, 1995**
1995 Boll

*Source: DX-185*

**June 10, 1996**
1996 Vahalia

*Source: DX-302*

**December 24, 1997**
'808 & '309 patent application

| 1995 | 1996 | 1997 | 1998 |

# Storage Units Existed Prior to Avid's Application

| 1995 Boll Distributed Database System | '808 /'309 Computer System |
|---|---|





# Avid Revised its Claims to Avoid the 1995 Boll Distributed Database System

*Avid Document*

| Avid's Statement | Avid's Revised Claim |
| --- | --- |



"[T]he claimed system, by virtue of the 'independent' storage units, avoids using a central controller to access data."





1.  (Currently Amended) A distributed data storage system for allowing one or more client systems to access data, comprising:

a plurality of independent storage units for storing ~~data~~, the data;

wherein the data is stored on the plurality of storage units in files ...

*Source: JX-3 at AVID0000198*

*Source: JX-3 at AVID0000191, amended claim 1*

14

# Avid Revised Claims to Avoid Prior Art

## 1995 Boll Distributed Database System

## Avid's Statement



*Source: DX-185 (1995 Boll patent), figure 1*



> "[T]he claimed system, by virtue of the 'independent' storage units, avoids using a central controller to access data."



*Source: JX-3 at AVID0000198*

15

# Avid's Statement to the U.S. Patent Office

| Avid's Statement |
|:---:|



> "[T]he claimed system, by virtue of the 'independent' storage <u>units</u>, avoids using a central controller to access data."



*Source: JX-3 at AVID0000198*

| 1995 Boll Distributed Database System |
|:---:|



*Source: DX-185 (1995 Boll patent), figure 1*

| MediaGrid System |
|:---:|



*Source: JX-16, figure 2*

23

# EXHIBIT B

### 3.4      CLAIM INTERPRETATION

I will now explain to you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the requirements of the claims.  As I have previously instructed you, you must accept my definition of these words in the claims as correct.  For any words in the claim for which I have not provided you with a definition, you should apply their common meaning.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.

| Claim Term | Court's Construction |
|---|---|
| "independent storage units" | "storage units which are not centrally controlled and whose memory addresses are not globally allocated"<br><br>The meaning of the term "independent storage units" is limited by disclaiming statements made by the patentee during prosecution.  Systems with "independent storage units" cannot use a central controller to access data, and, in particular, cannot use a central controller that identifies the storage unit on which data is stored in response to client requests. |
| "redundancy information" | "at least a copy of a segment" but may also include "information sufficient to recreate a segment" |
| "nonsequentially" | plain and ordinary meaning |
| "identifier," "identifier of each segment," "identifier of the segment," "identifier of a segment," and "identifier of the requested segment" | plain and ordinary meaning |

1

| Claim Term | Court's Construction |
|---|---|
| "means, operative in response to a request from one of the client systems, for retrieving the requested segment of the file from the storage unit using the information associating the identifier of each segment stored on the storage unit with the location of each segment on the storage unit" | Function: retrieving the requested segment of the file from the storage unit using the information associating the identifier of each segment stored on the storage unit with the location of each segment on the storage unit<br><br>Structure: a memory system on the storage unit (col. 12, lines 37-61); a table stored in the memory system, the table mapping a unique segment identifier for each segment to the location of that segment on the storage unit (col. 10, lines 46-50); a processor or independent controller on the storage unit (col. 11, lines 54-67), issuing program instructions to cause, for each request, the storage unit to transfer data between the disk and the buffer indicated by the request (col. 24, lines 22-29) |
| "means for sending the requested segment to the client system" | Function: sending the requested segment to the client system<br><br>Structure: a network interface at the storage unit (col. 11, lines 33-36); a processor or independent controller on the storage unit (col. 11, lines 54-67), issuing program instructions to transfer data from the disk queue to the network queue (col. 24, lines 27-29) |
| "means for sending a request, for each segment of the data requested by the application, to the storage unit on which the segment is stored" | Function: sending a request, for each segment of the data requested by the application, to the storage unit on which the segment is stored<br><br>Structure: a network interface at the client system (col. 11, lines 33-36); a processor or independent controller on the client system (col. 11, lines 54-67), configured to issue program instructions to cause the network interface to send the read request to the storage unit (Fig. 16 (step 274) and col. 21, lines 17-20) |

| Claim Term | Court's Construction |
|---|---|
| "means for selecting one of the storage units on which the segment is stored such that a load of requests on the plurality of storage units is substantially balanced" | Function: selecting one of the storage units on which the segment is stored such that a load of requests on the plurality of storage units is substantially balanced<br><br>Structure: a processor or independent controller on the client system (col. 11, lines 54-67), issuing a program instruction to implement the algorithm in Fig. 17 and described in Col. 23:6-32 |
| "means for scheduling the transfer of data from the storage unit such that the storage unit efficiently transfers data" | Function: scheduling the transfer of data from the storage unit such that the storage unit efficiently transfers data<br><br>Structure: a processor or independent controller on the client system (col. 11, lines 54-67), issuing program instructions to submit a request to a storage unit to cause it to transfer requested data from a disk buffer into a network queue (col. 8, lines 5-24) |
| "means for distributing each segment, and the redundancy information for each segment, among the plurality of storage units by sending to the storage unit the segment, among the plurality of storage units by sending to the storage unit the segment of the data and the identifier of the segment" | Function: distributing each segment, and the redundancy information for each segment, among the plurality of storage units by sending to the storage unit the segment of the data and the identifier of segment<br><br>Structure: a network interface at the client system (col. 11, lines 33-36); a processor or independent controller on the client system (col. 11, lines 54-67), issuing program instructions to cause the network interface to send one or more write requests to the storage units for the segment and its copy (Fig. 3 (step 124), Fig. 6 (step 214)) |

I also instruct you that the parties have agreed that the following claim terms have the

following definitions:

| Claim Term | Agreed Construction |
|---|---|
| "Selecting . . . independent of the storage units selected for other segments" | selecting at least two storage units for each segment (including redundancy information) without taking into consideration the storage units where other segments have been stored |
| "Shortest estimated time for servicing the request" | the estimated time for servicing a request is lowest among all participating storage elements or devices |

| Claim Term | Agreed Construction |
|---|---|
| "In response to a request, from an application executed on the computer" | in response to a request from software executed on the computer |
| "Segment table" | a table mapping the segment identifier to the storage units where the segment is stored |
| "Catalog" | multiple segment tables stored together |
| "means for maintaining information associating the identifier of each segment stored on the storage unit with the location of each segment on the storage unit" | Function: maintaining information associating the identifier of each segment stored on the storage unit with the location of each segment on the storage unit<br><br>Structure: a memory system on the storage unit (e.g., col. 12, lines 37-61); a table stored in the memory system, the table mapping a unique segment identifier for each segment to the location of that segment on the storage unit (e.g., col. 10, lines 46-50) |
| "means for receiving a request from one of the client systems for a segment of a file" | Function: receiving a request from one of the client systems for a segment of a file<br><br>Structure: network interface at the storage unit (e.g., col. 11, lines 33-36); a processor or independent controller on the storage unit (e.g., col. 11, lines 54-67), issuing program instructions to communicate with the network interface to receive requests for access, including but not limited to read and write access, to data stored on the medium (e.g., col. 6, lines 30-33) |
| "means, responsive to the request from the application to read data from a file, for determining, for each segment of the data requested by the application the storage unit on which the segment is stored" | Function: determining, for each segment of the data requested by the application the storage unit on which the segment is stored<br><br>Structure: a processor or independent controller on the client system (e.g., col. 11, lines 54-67), issuing program instructions to obtain the segment table for each source or file, which lists the segment identifiers and the storage units on which the segments are stored (e.g., col. 7, lines 55-58) |

4

| Claim Term | Agreed Construction |
|---|---|
| "means for receiving each segment requested from the storage units" | Function: receiving each segment requested from the storage units<br><br>Structure: network interface at the client system (e.g., col. 11, lines 33-36); a processor or independent controller on the client system (e.g., col. 11, lines 54-67), issuing program instructions to cause the network interface to receive, at a client memory, requested data from the storage unit (e.g., Fig. 20 (518), col. 25, lines 44-45) |
| "means for maintaining information, locally accessible by the file system of the computer, associating the identifier of each segment of the file with the storage unit on which the segment is stored" | Function: maintaining information, locally accessible by the file system of the computer, associating the identifier of each segment of the file with the storage unit on which the segment is stored<br><br>Structure: a memory system at the client system (e.g., col. 12, lines 37-61) storing a table listing the segment identifiers and the storage units on which the segments are stored (e.g., col. 7, lines 55-58) |
| "means, responsive to the request from the application to store the data in a file, for dividing the data into a plurality of segments and for associating each segment with an identifier" | Function: dividing the data into a plurality of segments and for associating each segment with an identifier<br><br>Structure: a processor or independent controller on the client system (e.g., col. 11, lines 54-67), issuing program instructions, in response to a request from the application to store data in a file, to cause the file data to be divided into segments, each associated with an offset within the file (e.g., Fig. 3 (121), col. 8, line 43 - col. 9, line 12) and with a unique identifier (e.g., col. 7, lines 47-55) |
| "means for selecting the at least two of the storage units from among the storage units in the selected subset" | Function: selecting the at least two of the storage units from among the storage units in the selected subset<br><br>Structure: a processor or independent controller on the client system (e.g., col. 11, lines 54-67), configured to initiate random or pseudorandom selection of two or more storage units from the subset of all available storage units (e.g., col. 9, lines 13-20) |

<u>AUTHORITY</u>

Federal Circuit Bar Association Model Patent Jury Instructions, § 2.3 (February 2013).

<u>AVID'S OBJECTIONS</u>

5

- Harmonic's instruction may confuse the jury to the extent it references a "common meaning" of claim terms.  Consistent with Chief Judge Sleet's claim constructions in this case and language previously approved by Chief Judge Sleet in prior cases (Finjan and CNH America[1]), Avid's instruction (Avid 3.2.1) discuss the concept of the "plain and ordinary meaning" of claim terms.

- Harmonic's proposed instruction fails to adequately describe the concept of the "plain and ordinary meaning" of claim limitations.  In contrast, Avid's instruction (Avid 3.2.1) includes an explanation of this concept using language already approved by Chief Judge Sleet in prior cases (Finjan).

- Harmonic's proposed instruction fails to instruct the jury that they must ignore claim term definitions used by witnesses or attorneys that differ from the ones given by the Court.

_____

[1] *CNH America LLC and Blue Leaf I.P., Inc. v. Kinze Mfg., Inc.* (Dist. Del., Civil Action No. 08-945-GMS) (D.I. 301) (2/10/11)