IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVID TECHNOLOGY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-1040-GMS |
| ) | |
| HARMONIC INC., ) | |
| ) | |
| Defendant. ) | |

**HARMONIC INC.'S RESPONSE TO AVID TECHNOLOGY, INC.'S MOTION TO PREVENT DEFENDANT FROM REARGUING CLAIM CONSTRUCTION AND/OR FROM ARGUING CLAIM CONSTRUCTION TO THE JURY**

Plaintiff Avid Technology, Inc. ("Avid")'s eleventh-hour motion is both legally and factually wrong as it contradicts the Court's Claim Construction Order.[1] It is also procedurally improper and illustrative of the type of sandbagging that the Court warned against at the Pretrial Conference.[2] Avid has its motion exactly backwards: it is *Avid*, not Defendant Harmonic Inc. ("Harmonic"), that wants to reargue claim construction. Indeed, prosecution history disclaimer is not a "buzzword." It is black letter law.

In the Claim Construction Order, the Court expressly stated that Avid had made a broad prosecution disclaimer as the meaning of the term "independent storage units" and set forth the scope of that disclaimer, stating:

> While the **parties agree that the meaning of the term** "independent storage units" is limited by disclaiming statements made by the patentee during prosecution, they dispute the scope of that disavowal. . . .
> **The court agrees with the defendant, Harmonic, Inc. ("Harmonic")**, that, with regard to the "central controller" issue, the patentee and plaintiff, Avid

---

[1] *See* Exhibit 1 (Dkt. 116 (April 15, 2013 Claim Construction Order, p. 1, fn. 1)).
[2] *See* Exhibit 13 (December 23, 2013 Pretrial Transcript, 7:14-24 ("Let me say that to you as well. This is not trial by surprise, in any courtroom in the United States, but particularly and most especially in federal courtrooms. We don't do that anymore. Enough said?")).

>Technology, Inc. ('Avid'), **set forth a broad disclaimer**. The above prosecution statement is unambiguous on that point – **systems with 'independent storage units' cannot use a central controller to access data, and, in particular, cannot use a central controller that identifies the storage unit on which data is stored in response to client requests.**

Claim Construction Order, p. 1, fn. 1 (underlining and emphasis added).[3]

Harmonic embraces the Court's claim construction and the broad prosecution history disclaimer found by the Court. This should come as no surprise. This was Harmonic's position at claim construction.[4] This was Harmonic's position in its expert reports.[5] This was Harmonic's position at the summary judgment letter briefing stage.[6] This was Harmonic's position in its Trial Brief.[7] This was Harmonic's position at the Pretrial Conference,[8] and Harmonic's chief evidentiary issue raised at the Pretrial Conference was preventing Avid from having its expert "offer any opinions at trial that are inconsistent with this Court's claim construction order."[9]

---

[3] *See* Exhibit 1 (Dkt. 116 (Claim Construction Order, p. 1, fn. 1)).
[4] *See id.*
[5] Given the inclusion of source code material, a copy of the May 22, 2013 Expert Report of Dr. John Levy Regarding Non-Infringement of U.S .Patent Nos. 6,760,808 and 7,487,309 will be included as Exhibit 6 in the hard copy of materials provided to the Court at the beginning of the trial day on January 22, 2014.
[6] *See* Dkt 130 (July 12, 2013 Letter to the Honorable Gregory M. Sleet from David E Moore (re summary judgment briefing)). Given the inclusion of highly confidential information, a copy of Dkt 130 will be included as Exhibit 7 in the hard copy of materials provided to the Court at the beginning of the trial day on January 22, 2014.
[7] *See* Dkt 137, Schedule I(i)-2 (Harmonic's Trial Brief). Given the inclusion of highly confidential information, a copy of Dkt 137, Schedule I(i)-2 will be included as Exhibit 10 in the hard copy of materials provided to the Court at the beginning of the trial day on January 22, 2014.
[8] *See* Exhibit 13 (2013-12-23 Pretrial Conference Transcript, 35:4-11).
[9] *See* Exhibit 11 (Dkt 137, Schedule M-2 (Harmonic's List of Evidentiary Issue, Issue 1)).

**Harmonic's opening statement demonstratives outline this issue for the case.** The jury will have to factually decide whether the MediaGrid system falls within the scope of Avid disclaimer. Based on the Avid's broad prosecution history disclaimer (and the Court's confirmation regarding the corresponding disavowal of claim scope), "systems with 'independent storage units' cannot use a central controller to access data, and, in particular, cannot use a central controller that identifies the storage unit on which data is stored in response to client requests."[10] The evidence will show that the Harmonic MediaGrid system does not contain the required "independent storage units" because the MediaGrid system uses a central controller (i.e., the ContentDirector) that identifies the storage units (i.e., the ContentServers) on which data is stored in response to client requests. This is the position taken in Harmonic's opening statement demonstratives – the same position that Harmonic has consistently taken in this litigation and for years prior – for which Avid now complains.

In contrast, Avid raises a new position on the eve of trial. Avid contends that (1) because the Court's identification of a broad prosecution history disclaimer is made in a footnote of the Claim Construction Order, it has no effect on the meaning of the term "independent storage units" and (2) the disclaimer, if applicable at all, refers only to prosecution history estoppel as related to the doctrine of equivalents. Avid is wrong on both grounds.

**I.      The Court found that Avid made a broad prosecution disclaimer that limits the meaning of the term "independent storage units" and narrows the scope of Avid's claims.**

The fact that Avid's broad disclaimer goes directly to the *meaning* of the term "independent storage units" could not be more clear: the Court's Claim Construction Order

---

[10] *See* Exhibit 1 (Dkt. 116 (April 15, 2013 Claim Construction Order, p. 1, fn. 1)).

expressly states that "the parties agree that the meaning of the term "independent storage units" is limited by disclaiming statements made by the patentee during prosecution."[11] The Court found that the parties – both Harmonic and *Avid* – agreed at the time of the *Markman* hearing that the disclaimer limited the meaning of the term "independent storage units." On the eve of trial, Harmonic learns for the first time that Avid's position is that the disclaimer does not affect the meaning of the term and somehow only relates to prosecution history estoppel.

Avid's position is contrary to black-letter law and the law of this Court. The Federal Circuit stated in *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-24 (Fed. Cir. 2003) that "[t]he doctrine of prosecution disclaimer is well established in Supreme Court precedent, precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution."[12] The court further explained, "where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender."[13] Prosecution history disclaimer is not a mere "buzzword" as Avid suggests.

In fact, this Court has rejected the very position that Avid seeks to raise (literally on the eve of trial), stating:

> [W]hile prosecution history estoppel applies to the doctrine of equivalents, prosecution disclaimer applies to literal infringement. As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution.

---

[11] *See* Exhibit 1 (Dkt. 116 (Claim Construction Order, p. 1, fn. 1)).
[12] *See* Exhibit 3. The *Omega* case was expressly cited by the Court in its Claim Construction Order. *See* Exhibit 1 (Dkt. 116 (April 15, 2013 Claim Construction Order, p. 1, fn. 1)).
[13] *See id.*

*LG Elecs. USA, Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 565 (D. Del. 2011) (citing *Omega Eng'g*).[14] The language in this Court's *LG* decision is key here: "prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *See id.*

Harmonic's story at trial precisely correlates to this legal theory. Harmonic will demonstrate through evidence at trial that it relied on Avid's statement made during prosecution that its patents did not cover a "central controller that identifies the storage unit on which data is stored in response to client requests." Avid now seeks to preclude Avid from telling that story on baseless grounds.

This Court's decision in *Bayer Healthcare LLC v. Abbott Labs.*, 2005 LEXIS 21042, *27-29 (D. Del. 2005) is also instructive. In *Bayer*, this Court granted summary judgment of non-infringement on the basis of prosecution history disclaimer. Specifically, the Court construed the term "gear" to mean "a toothed machine part, such as a wheel or cylinder, that meshes with another toothed part, to transmit motion or to change speed or direction, and which excludes a chain."[15] In granting summary judgment, this Court held that the "application of [the prosecution history disclaimer] doctrine is not limited to the construction of terms" and that "it can be invoked if 'the patentee unequivocally imparted a novel meaning to those terms *or expressly relinquished claim scope* during prosecution.'"[16] This Court found that plaintiff "disclaimed the very structure [sprockets] it now accuses of infringing" and that summary judgment was appropriate notwithstanding the fact that the plaintiff "did not relinquish sprockets

---

[14] *See* Exhibit 4.
[15] *See* Exhibit 5.
[16] *See id.* (italics in original) (citing *Omega*).

from the scope of the term 'gear.'"[17] In other words, even in instances where prosecution history disclaimer does not limit the meaning of a term, the scope of a claim can nevertheless be "expressly relinquished." Avid's position is without merit and contrary to this Court's law.

Here, as noted by the Court in the claim construction order, Avid's prosecution history disclaimer limited "the meaning of the term 'independent storage units'" as it is a "broad disclaimer" for which "Avid ma[de] the scope of this disclaimer even more clear in discussing the Boll prior art."[18] Thus, even if Avid position that the meaning of the term "independent storage units" were correct (and it is not), Avid would still have expressly relinquished the scope of its claims in relation to the Boll reference.

Here, Avid not only seeks to exclude Harmonic from telling its story at trial that it relied on Avid's statement made during prosecution that its patents did not cover a "central controller that identifies the storage unit on which data is stored in response to client requests," its seeks to preclude Harmonic from presenting the Boll reference – the very reference on which Avid expressly relinquished claim scope during prosecution – as evidence in this case. This is improper.

## II.     It is Avid, not Harmonic, that seeks to reargue claim construction.

On page three of Avid's motion, Avid makes the argument that application of the prosecution history disclaimer found by the Court cannot affect the meaning of the term "independent storage units" because "dependent claims 4 and 19 of the '309 patent expressly cover a 'central database' containing a 'catalog' that is 'accessible by all clients.'" This is the same argument that Avid presented at claim construction, and this Court rejected. A comparison

---

[17] *See id.*
[18] *See* Exhibit 1 (Dkt. 116 (Claim Construction Order, p. 1, fn. 1)).

of Avid's argument in this current motion (where it accuses Harmonic of seeking to reargue claim construction) and Avid's prior claim construction argument is illustrative:

| **Avid's Current Motion** | **Avid's Claim Construction Brief[19]** |
|---|---|
| The words in Harmonic's newly proposed construction can, without question, be found as part of the Court's footnote explanation of its claim construction order. They are not part of the construction itself, however, for good reason – adopting these words as Harmonic now urges is facially inconsistent with the patent specification and the allowed claims. (*See, e.g.*, '309 Patent at Fig. 1, 6:54-57, 18:51-55, and claims 4 and 19, respectively).<br><br>Specifically, dependent claims 4 and 19 of the '309 patent expressly cover a "central database" containing a "catalog" that is "accessible by all clients." (*Id.*) As agreed in the Amended Joint Claim Construction Statement, the claimed catalog, stored in the central database, is composed of segment tables that identify the storage units on which segments of data are stored. (D.I. 86 at 2; *see also* '309 patent at 6:54-57, 7:19-21 and 7:35-37.) If the Court had construed the independent claims to bar a central database for identifying the storage units on which segments are stored, as Harmonic now seeks to argue, then claims 4 and 19 of the '309 patent would be rendered meaningless because they would directly conflict with the independent claims. | "Independent storage units" do not exclude a system wherein clients access a central server (asset or catalog manager) prior to directly accessing the storage units. Defendant's construction, with its broad and vague use of the negative limitations "not part of a global allocation," and "not centrally controlled," would exclude claimed embodiments, conflict with dependent claims, and fail to respect the intrinsic evidence. Contrary to Defendant's construction, the specification and claims are replete with embodiments where information associating segments to storage units (segment table) is maintained on a central server that a client accesses before communicating with storage units. . . .<br><br>[T]here are dependent claims directed to embodiments Defendant tries to exclude with its vague construction. For example, in U.S. Patent No. 7,487,309 (the "'309 Patent"), claims 2–4 recite "wherein the data for a file is stored in a segment table (claim 2) … wherein the segment tables for a plurality of files is stored in a catalog (claim 3)… wherein catalog is stored in a <u>central database accessible by all clients</u>. (claim 4)" (emphasis added)). |

At claim construction, the Court adopted Harmonic's proposed claim construction of the term "independent storage units," found a broad prosecution history disclaimer as to the use of a central controller, and rejected Avid's claim construction arguments – the same arguments that

---

[19] *See* Exhibit 14 (Dkt 109 (February 6, 2013 Responsive Claim Construction Brief of Avid), pp. 5-6))).

7

Avid is making in its current motion. Harmonic will be embracing the Court's claim construction and related broad prosecution history disclaimer at trial. The Court should deny Avid's request to prevent Harmonic from presenting evidence to the jury regarding its reliance on Avid's statement made during prosecution that its patents did not cover a "central controller that identifies the storage unit on which data is stored in response to client requests."

**III.    Avid's motion is procedurally improper and reflects the type of conduct that this Court cautioned against at the Pretrial Conference.**

Harmonic's story – its legal theory for non-infringement based on Avid's broad prosecution history disclaimer – has not changed since Avid first contacted Harmonic's predecessor, Omneon, in April 2010.[20] Indeed, it has always been clearly articulated as based on Avid's broad prosecution history disclaimer. This is evident from Harmonic's claim construction briefing,[21] expert reports,[22] summary judgment letter briefing,[23] Trial Brief,[24] and Pretrial Conference positions.[25]

Notably, Harmonic's chief evidentiary issue raised at the Pretrial Conference was preventing Avid from having its expert "offer any opinions at trial that are inconsistent with this Court's claim construction order."[26] For which the Court responded:

> That is not an issue. Let's be clear for the record. Defendant, in its list of evidentiary

---

[20] *See e.g.*, Exhibit 13 (January 23, 2013 Pretrial Transcript, 35:4-11 (describing Harmonic's non-infringement theory at trial as the same as when it obtained the opinion of counsel in response to Avid's April 2010 notice letter)).

[21] *See* Exhibit 1 (Dkt. 116 (April 15, 2013 Claim Construction Order, p. 1, fn. 1)).

[22] *See* Exhibit 6 (May 22, 2013 Expert Report of Dr. John Levy Regarding Non-Infringement of U.S .Patent Nos. 6,760,808 and 7,487,309).

[23] *See* Exhibit 7 (Dkt 130 (July 12, 2013 Letter to the Honorable Gregory M. Sleet from David E Moore (re summary judgment briefing))).

[24] *See* Exhibit 10 (Dkt 137, Schedule I(i)-2 (Harmonic's Trial Brief)).

[25] *See* Exhibit 13 (2013-12-23 Pretrial Conference Transcript, 35:4-11).

[26] *See* Exhibit 11 (Dkt 137, Schedule M-2 (Harmonic's List of Evidentiary Issue, Issue 1)).

issues, requested the Court not allow opinions that are inconsistent with the Court's claim construction. Well, I don't think many trial judges, after laboring with claim construction, are going to let an opinion witness get on the stand and contradict that order. It's just not our – we are not made up that way.[27]

Despite Harmonic's repeated and consistent statement of its position (and the Court's explicit ruling at the Pretrial Conference), Avid never raised issue with Harmonic's position at any time prior to the eve of trial nor did Avid assert the position that the Court's identification of a broad prosecution history disclaimer has no effect on the meaning of the term "independent storage units" and constitutes mere prosecution history estoppel. Indeed, the first time that Harmonic uncovered Avid's position was on a meet and confer call on January 18, 2014,[28] when Avid refused to withdraw its objections to the Boll reference – the reference on which Avid's prosecution history disclaimer is based – on the grounds that such reference should not be presented to the jury because it was irrelevant and prejudicial. The fact that the Avid's full disclosure of this dispute did not occur until the night before jury selection and Harmonic never received notice that Avid would be filing this motion is unfathomable given the consistency and frequency that Harmonic has made its non-infringement position known in this case.

Date: January 22, 2014

                                              Respectfully submitted,

                                              /s/      David E. Moore
                                              David E. Moore (No. 3983)
                                              Jonathan Choa (No. 5319)
                                              Bindu A. Palapura (No. 5370)
                                              POTTER ANDERSON & CORROON LLP
                                              Hercules Plaza, 6th Floor
                                              1313 N. Market Street
                                              Wilmington, DE 19801
                                              (302) 984-6000

---

[27] Exhibit 13 (January 23, 2013 Pretrial Transcript, 44:6-13).
[28] i.e., three days before trial was originally slated to begin.

dmoore@potteranderson.com
jchoa@potteranderson.com
bpalapura@potteranderson.com

OF COUNSEL:

James C. Yoon
Christopher P. Grewe
Matthew Sumida
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
(650) 565-3645

**COUNSEL FOR DEFENDANT HARMONIC INC.**