IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVID TECHNOLOGY, INC.,     ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.     ) | C.A. No. 11-1040-GMS |
| ) | |
| HARMONIC INC.,     ) | |
| ) | |
| Defendant.     ) | |

**MEMORANDUM**

## I.  INTRODUCTION

In this patent infringement action, plaintiff Avid Technology, Inc. ("Avid") alleges that products manufactured by defendant Harmonic Inc. ("Harmonic") infringe the asserted claims of the patents-in-suit.[1] (D.I. 1.)  The court held a nine-day jury trial in this matter on January 23 through February 4, 2014.  (D.I. 169–177.)  At trial, both parties properly moved for judgment as a matter of law ("JMOL") on a number of grounds pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.  (D.I. 151, 152.)[2]

On February 4, 2014, the jury returned a unanimous verdict in favor of Harmonic on the issue of infringement with respect to all asserted claims.  (D.I. 158 at 2–4.)  The jury further found in favor of Avid that none of the asserted claims were invalid due to anticipation or obviousness. (*Id.* at 5–6.)  The court entered judgment on the verdict on April 15, 2014.  (D.I. 164.)  Presently before the court is Avid's renewed JMOL motion or, alternatively, motion for a new trial, pursuant

---

[1] The patents-in-suit are U.S. Patent Nos. 6,760,808 ("the '808 Patent") and 7,478,309 ("the '309 Patent").
[2] The court declined to rule on the parties' initial JMOL motions during trial.  (Tr. at 791–92, 1249–50.) The court denies them at this time.

to Rules 50(b) and 59 of the Federal Rules of Civil Procedure. (D.I. 168.) Having considered the substantial evidence in the record, the parties' post-trial submissions, and the applicable law, the court will deny Avid's motion. The court's reasoning follows.

## II.     BACKGROUND OF THE TECHNOLOGY

The patents-in-suit relate to shared digital storage systems. These systems are used to allow multiple users to work collaboratively on large data projects, *e.g.*, movie editing. Avid asserts that Harmonic's MediaGrid product infringes the '808 and '309 Patents. There are two remaining disputes central to the parties' infringement positions: (1) whether the MediaGrid product employs a "central controller" to access stored data, such that it does not practice the "independent storage units" element of the asserted claims; and (2) whether the MediaGrid product stores data "in files."

## III.    STANDARD OF REVIEW

Avid's motion asserts that is entitled to judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure or, alternatively, that it is entitled to a new trial pursuant to Rule 59.

### A.  Renewed JMOL Motion

To prevail on a renewed motion for judgment as a matter of law following a jury trial and verdict, the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "Substantial evidence" is defined as "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding

under review." *Perkin-Elmer Corp.*, 732 F.2d at 893; *see also SIBIA Neuroscis., Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1354 (Fed. Cir. 2000) ("A factual finding is supported by substantial evidence if a reasonable jury could have found in favor of the prevailing party in light of the evidence presented at trial.")

"This court draws all reasonable inferences in favor of the prevailing party without substituting its view of conflicting evidence for that of the jury." *Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1086–87 (Fed. Cir. 2003). To this end, the court is not to make credibility determinations. *See SIBIA Neuroscis.*, 225 F.3d 1349 at 1355. Only if, "after reviewing all of the evidence in a light most favorable to the prevailing party, this court is convinced that a reasonable jury could not have found in that party's favor" is the grant of JMOL proper. *Id.*

### B. New Trial

Pursuant to Federal Rule of Civil Procedure 59, a court may grant a new trial "for any of the reasons for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The decision to grant or deny a new trial is within the sound discretion of the trial court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). In making this determination, the trial judge should consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts. *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 89 (3d Cir. 1960). Unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *Allied Chem. Corp.*, 449 U.S. at 36. A court should grant a new trial in a jury case, however, only if "the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand."

*Williamson v. Conrail*, 926 F.2d 1344, 1352 (3d Cir. 1991).

## IV. DISCUSSION

### A. <u>Judgment as a Matter of Law</u>

The only issue before the court is whether the jury's findings of non-infringement were supported by substantial evidence. Avid asserts two arguments as to why the verdict was improper. The court considers each of these arguments in turn.

### 1. Independent Storage Units

Avid contends that the jury's finding of non-infringement could not have been supported by substantial evidence because it was misinformed about the proper definition of "independent storage units." Avid also argues that, even under the given instruction, no reasonable jury could have found that Harmonic's MediaGrid product is centrally controlled.

The court first addresses Avid's contention that the jury was improperly instructed as to the definition of "independent storage units." This is not the first time Avid has put forth this argument, and the court does not consider post-trial briefing to be the appropriate context for Avid to reiterate its dissatisfaction with the court's rulings. In the court's claim construction order, "independent storage units" was construed to mean "storage units which are not centrally controlled and whose memory addresses are not globally allocated." (D.I. 116 at 1.) Moreover, in the footnote explaining the rationale, the court stated "systems with 'independent storage units' cannot use a central controller to access data, and, in particular, cannot use a central controller that identifies the storage unit on which data is stored in response to client requests." (*Id.* at 1 n.1.) After lengthy discussions with the parties during the pretrial conference and at trial, the court determined that this portion of the rationale should be provided to the jury to explain the scope of

4

Avid's disclaimer. (Tr. at 894–98, 983–85.) Thus, the full construction of "independent storage units" presented to the jury was:

| Claim Term | Court's Construction |
|---|---|
| independent storage units | storage units which are not centrally controlled and whose memory addresses are not globally allocated

systems with independent storage units cannot use a central controller to access data, and, in particular, cannot use a central controller that identifies the storage unit on which data is stored in response to client requests |

(D.I. 153 at 17.)

Avid's contentions that the additional portion of the construction drawn from the footnote is (1) an improper embellishment, and (2) an incomplete expression of the court's claim construction order were already considered and rejected. (Tr. at 894–98, 983–85.) Should Avid wish to seek further review of the court's ruling on the jury instructions, an appeal to the Federal Circuit would seem the proper course of action. But at this stage, the court's consideration is limited to whether the jury's verdict was proper under the instructions actually provided:

> [P]arties cannot reserve issues of claim construction for the stage of post-trial motions. . . . On JMOL, the issue here should have been limited to the question of whether substantial evidence supported the verdict under the agreed instruction. . . . The verdict must be tested by the charge actually given and by giving the ordinary meaning of the language of the jury instruction.

*Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320–21 (Fed. Cir. 2003).

To the extent that Avid argues the jury's conclusions were still not supported by substantial evidence, the court finds that there is ample evidence in the record which could support a determination that Harmonic's MediaGrid product is "centrally controlled" and therefore outside

the scope of Avid's patent protection. Harmonic's expert Dr. John Levy testified that the MediaGrid product employs a ContentDirector, which is in fact a central controller. (Tr. at 949– 51 (Levy).) Avid argues there was no evidence that the ContentDirector "accesses data" and thus does not meet the criteria of a central controller as defined by the jury instruction: "independent storage units cannot use a central controller *to access data*." (D.I. 153 at 17 (emphasis added).) But the instruction goes on to say, "and, in particular, [systems with independent storage units] cannot use a central controller that identifies the storage unit on which data is stored in response to client requests." (*Id.*) Both Dr. Levy and Avid's expert Dr. Shahram Ghandeharizadeh testified that the ContentDirector performs this function. (Tr. at 599 (Ghandeharizadeh) ("Q. Doctor, you agree with me that in response to a client request, the ContentDirector will identify the storage unit, the ContentServer under which data is stored. Correct? A. Yes, it does."); Tr. at 951 (Levy).)

At a minimum, these testimonies furnish substantial evidence in support of the jury's verdict of noninfringement. Avid provided evidence to the contrary, but the court's role at this stage is a limited one. *See SIBIA Neuroscis.*, 225 F.3d 1349 at 1355 ("[The court] must draw all reasonable inferences in favor of the prevailing party, and not make credibility determinations or substitute [its] view of the conflicting evidence for that of the jury.") A reasonable jury could have concluded that Harmonic's MediaGrid product is centrally controlled and therefore does not infringe the patents-in-suit.

### 2. "In Files" Limitation

Having found that there was sufficient evidence in the record supporting the conclusion that the MediaGrid product is centrally controlled, there is substantial evidence in support of the jury's verdict of noninfringement. Nonetheless, the court briefly addresses Avid's additional

6

argument regarding whether the MediaGrid product practices the "in files" limitation of the asserted claims.

The parties did not seek construction of the claim term at issue: "in files." The term appears in each of the asserted claims, but as an example, claim 1 of the '808 Patent states:

> wherein the data is stored on the plurality of storage units *in files*, wherein each file includes segments of data and redundancy information for each segment, wherein each segment has an identifier, and wherein, for each file, the segments and the redundancy information for each segment are distributed among the plurality of storage units . . . .

(JX-1, claim 1 (emphasis added).) Because the court did not construe the term, it is given its "plain and ordinary meaning" as understood by one skilled in the art. It was not improper for Harmonic to offer its view of the plain and ordinary meaning to the jury. *See Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 733 F. Supp. 2d 517, 546 (D. Del. 2010) (finding that "reasonable minds could differ both as to the meaning and presence of [a claim] limitation" given its plain and ordinary meaning"). Thus, Dr. Levy's testimony therefore did not "argu[e] claim construction to the jury," as Avid contends. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014). On the contrary, Avid's attempt to reargue (or assert for the first time) claim construction positions at this stage is, in the court's view, improper. *See Hewlett-Packard*, 340 F.3d at 1320–21 ("[W]here the parties and the district court elect to provide the jury only with the claim language itself, and do not provide an interpretation of the language in the light of the specification and the prosecution history, it is too late at the JMOL stage to argue for or adopt a new and more detailed interpretation of the claim language and test the jury verdict by that new and more detailed interpretation."). Avid could have challenged Dr. Levy's interpretation of the plain and ordinary meaning of "in files" on cross-examination, as is the usual

7

practice.

The jury was free to adopt Dr. Levy's view that the MediaGrid product does not practice the "in files" limitation, which was supported by substantial evidence. Dr. Levy testified that one skilled in the art would understand that storing data as "slices" on MediaGrid's ContentServers is not the same as storing data "in files," as required by the limitation of the asserted claims. (Tr. at 991 (Levy).) Specifically, Dr. Levy stated that the storage of slices on the ContentServers cannot satisfy the "in files" limitation because the slices do not contain *multiple* segments of data or redundancy information, as required by the language of the claims. (Tr. at 980–92 (Levy).)

Other than presenting conflicting testimony from its own experts, Avid has not demonstrated that a reasonable jury could not have found that the "in files" limitation was absent from Harmonic's MediaGrid product. It is not the court's role to second guess the credibility determinations of the jury. *See SIBIA Neuroscis.*, 225 F.3d 1349 at 1355. There was substantial evidence in support of the jury's verdict regarding noninfringement. Avid's request for judgment as a matter of law is denied.

### B. New Trial

Avid makes no additional arguments in support of its request for a new trial. The court is not convinced that Avid has made the requisite showing that the jury's verdict was against the "weight of the evidence" or that a "miscarriage of justice" would result if the court were to uphold the verdict. *See Levy v. Schmidt*, 573 F. App'x 98, 105 (2014) ("A district court should grant a new trial on the basis that the verdict was contrary to the weight of the evidence 'only where a miscarriage of justice would result if the verdict were to stand.'" (quoting *Williamson*, 926 F.2d at 1352))).

[T]his stringent standard is necessary "to ensure that a district court does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts."

See id. (quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996)). The court denies Avid's request for a new trial.

## V.    CONCLUSION

For the reasons stated above, the court will deny Avid's motion for judgment as a matter of law, as well as its motion for a new trial. (D.I. 168.) The parties' initial Rule 50(a) motions submitted during trial are also hereby denied. (D.I. 151, 152.)

Dated: December _17_, 2014

_____
UNITED STATES DISTRICT JUDGE

9